HENRY H. SMITH, plaintiff in error, *vs.* JOHN H. NEWTON, defendant in error.

1. Where the defense to an action upon notes given for a fourth interest in certain gas works, was that the defendant had been induced to purchase the same by the gross misrepresentation of the plaintiff as to value, etc., it was not error to exclude testimony to the effect that plaintiff had told witness shortly before such purchase, that the cost of the works was over $30,000, that they were making a net income of 10 per cent., and were like a young apple orchard, just beginning to bear fruit, and would soon bear more largely, it not appearing that defendant was present, or that he had ever heard of this conversation previous to his purchase.

2. The gross earnings of the works for two years, commencing nearly three years after the purchase, were properly excluded as irrelevant.

3. That a house and lot, taken by plaintiff from defendant, in part pay-payment for the works at $3,500, were, in fact, worth but from $2,000 to $2,500, admissible to show in rebuttal.

4. Competent to show by city assessor that he assessed the gas works for the year 1872 at $30,000, and that they had depreciated fifty per cent. since that time.

5. All previous negotiations are merged in a subsequent written contract. An additional obligation cannot be grafted thereon by parol testimony, unless made subsequently to the contract, upon a valuable consideration. To attack the contract on the ground of fraud, that fraud must refer to the excution thereof; to annex thereto the additional stipulation, it must appear to have been omitted at the time of execution through fraud, accident, or mistake.

6. Misrepresentation of a material fact, made recklessly, without

knowledge, and acted on by the opposite party, constitutes legal fraud It will not avail the plaintiff that the defendant believed he did not intend to deceive, if the defendant was, in fact, thereby deceived.

7. The verdict could not have been otherwise than as rendered.

JACKSON, Judge, concurred specially.

Evidence. Contracts. Fraud. New trial. Before Judge Underwood. Floyd Superior Court. January Adjourned Term, 1877.

Sufficiently reported in the opinion.

SMITH & BRANHAM; WRIGHT & FEATHERSTON, for plaintiff in error.

C. ROWELL, for defendant.

WARNER, Chief Justice.

This was an action brought by the plaintiff against the defendant on certain described promissory notes, dated on the 9th of April, 1872, and due at different times, the last being payable thirty months after the date thereof, all amounting to the sum of $3,800. The defendant pleaded to the plaintiff's suit, that on the 9th of April, 1872, he purchased of the plaintiff a one-fourth interest in the Rome gas works, at and for the price of $7,500, paying him therefor $3,700, and giving the notes sued on for the balance; that he purchased said property on the representations of said plaintiff as to its value, condition, etc., which were not true; that said works had paid, and would pay ten per cent on thirty thousand dollars, net profit, to the company, when said works had never paid anything to said company, and the plaintiff knew it; that plaintiff represented to defendant that said works had cost $50,000, when the same had not cost exceeding $15,000, and were not worth more than that, which the plaintiff well knew, etc; that, as an inducement to make said purchase, plaintiff agreed to pay defend-

ant a salary as superintendent of said works, at the rate of $1,000 per annum, for the first six months after the purchase, and for the next succeeding twelve months thereafter, a salary of $1,500 per annum, and after the expiration of eighteen months after said sale, a salary of $2,000 per annum; which the plaintiff failed to perform, having only paid him $1,502.70 under said contract, whereby defendant claims that he has been damaged $2,709, On the trial of the case the jury, under the charge of the court, found a verdict in favor of the plaintiff for the amount of the notes, with interest. The defendant made a motion for a new trial, on various grounds, as therein stated, which was overruled, and the defendant excepted... It appears, from the evidence in the record, that at the time the notes sued on were given, the following instruments in writing were executed between the parties, going to show what were the terms of the contract:

" STATE OF GEORGIA—Floyd county. ·

Know all men by these presents, that I, John H. Newton, of Clark county, Ga., am held and firmly bound unto Henry H. Smith, his heirs and assigns, in the sum of fifteen thousand dollars, for the true payment of which I bind myself, my heirs, executors and administrators, jointly and severally, by these presents. Sealed with my seal and dated this the ninth day of April, 1872.

Now the condition of the above bond is this:

Whereas, the above bound, John H. Newton, has this day bargained to the said Henry H. Smith the following property to-wit, an undivided one-fourth interest in the property of the Rome Gas Works, in the city of Rome, consisting of real estate numbers sixty-six, sixty-seven, and one-half interest in sixty-eight, in the Coosa division of said city, on which are placed the gas works building and gas apparatus; also, an undivided one-fourth interest in the main gas piping laid down in the streets of said city, and a one-fourth interest in all other personal property that rightfully be-

longs to said gas works. The whole property of said Rome Gas Works being estimated at thirty thousand dollars, and the part here bargained for is seventy-five shares, valued at one hundred dollars each, for the sum of seven thousand five hundred dollars, and the said Henry H. Smith has paid the said John H. Newton the sum of three thousand seven hundred dollars, and given his (Smith's) notes for thirty-eight hundred dollars more due : the first note six months after date for five hundred dollars, and the second note due twelve months after date for five hundred dollars more, and the third note due eighteen months after date for one thousand dollars, and a fourth note due twenty-four months after date for one thousand dollars, also a fifth note due thirty months after for eight hundred dollars ; all of above notes bearing interest at the legal rate from the first day of January, 1872.

Now, if the said Henry H. Smith shall pay all of the above described notes when due, then the said John H. Newton is to make good titles to the said bargained property to the said Henry H. Smith.   And then this obligation to be null and void, else in full force.

Given under my hand and seal this April 9th, 1872.

[Signed,]       John H. Newton.  [seal.]"

" Georgia—Floyd county.

It is hereby agreed between John H. Newton, of the county of Clark, of said State, and Henry H. Smith, of Floyd county, Georgia, that in consideration of said Smith having this day bargained for a one-fourth interest in the Rome Gas Works, that the said Smith shall receive from the said gas company a salary for superintending said gas works, its operation and management, at the rate of one thousand dollars per annum for the first six months after he takes charge as such superintendent.  And it is further agreed that all the indebtedness to the said company, and all the liabilities of said company, shall enure to and be assumed by each of the parties whose names are hereto subscribed in

proportion to the share each has in said gas works, dating from the first of January, 1872.

Witness our hands and seals this April 9th, 1872.

[Signed,]     { John H. Newton.   [seal.]
              { Henry H. Smith.   [seal.]"

1. There was no error in ruling out the evidence of Phinizy, offered by the defendant to prove that the plaintiff told him, in January, 1872, "that the cost of the gas works was over $30,000, and were making a net income of 10 per cent., and in his opinion would make a large net income, comparing them to a young apple orchard just beginning to bear fruit, and which would soon bear fruit more largely," it not appearing that the defendant was present, or that he had ever heard of that talk of the plaintiff to Phinizy when he purchased the property in the month of April thereafter.

2. There was no error in ruling out the evidence of Gardner as to the gross earnings of the gas works from 1st of November, 1874, to 1st November, 1875, and from 1st November, 1875, to 1st November, 1876, the same not being relevant to the issue on trial.

3. There was no error in allowing the plaintiff to testify, in rebuttal of the defendant's evidence, that he accepted a house and lot from the defendant, in part payment for the gas works, at the price of $3,500; did not know its real value at the time, but afterwards found out its true value when he inspected and tried to sell it—two thousand dollars was all he could get offered for it.

4. There was no error in allowing Hargrove to testify in rebuttal of the defendant's evidence that the value of the gas works had depreciated fifty per cent. since 1872—the city not taking gas—and that he was city assessor for that year, and that he assessed the gas works, under oath, to be of the value of $30,000, and that the store-house that the defendant let the plaintiff have was worth from $2,200 to $2,500 in 1872.

5. The defendant also complains of the charge of the

court, and insists that, in view of the evidence in the record, his theory of the case was not properly submitted to the jury under the law applicable thereto—especially as to the plaintiff's representation to the defendant in regard to the profits of the gas works, upon the faith of which, he states in his testimony, he purchased the property. The entire charge of the court is as follows :

"GENTLEMEN OF THE JURY—It is the duty of the court to charge you the law of this case. It is your exclusive right and duty to find what is proven, what the proofs in this case establish. The court has not the right to say or intimate to you what is proven or what is not proven; and if you should come to the conclusion from anything I may say to you, that I have any opinion of what is proven or not proven or established by the proofs, it is a mistake. The plaintiff in this case contends that he has proved that on the day alleged in the declaration, the defendant made and executed the promisory notes described, and delivered them to him. If you find from the evidence that this is true, then the plaintiff has made a *prima facie* case. The defendant pleads fraud and misrepresentation and other pleas, which you will find in the records and papers. The onus or burthen of proof is upon the party that alleges fraud, misrepresentation or any other matter of defence. Fraud will not be presumed but must be proved. It may be proved by direct evidence or by circumstances. Fraud may be actual or constructive. Actual fraud consists in any kind of artifice, by which another is deceived. Constructive fraud consists in any act of omission or commission, contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another. The former implies moral guilt, the latter may be consistent with innocence. Misrepresentation of a material fact, made wilfully, to deceive, or recklessly, without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud.

An accident, relievable in equity, is such an occurrence, not the result of negligence or misconduct of the party seeking relief in relation to a contract, as was not anticipated by the parties when the same was entered into, and which gives an undue advantage to one of them over another in a court of law. Mistake relievable in equity is some unintentional act or omission or error, arising from ignorance, surprise, imposition or misplaced confidence. This power is exercised with caution, and to justify it the evidence must be clear, unequivocal and decisive as to the mistake. Wilful misrepresentations of a material fact, made to induce another to act, and upon which he does act, to his injury, will avoid a contract. The object of all legal investigation is the discovery of the truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence.

" All previous conversations, propositions and stipulations are merged in the written contract. A condition or additional obligation cannot be engrafted on the written contract, by parol testimony, unless made subsequently to the contract upon a valuable consideration. In order to attack the contract in writing on the ground of fraud, the fraud must refer to the execution of the contract, or the condition or stipulation must be the result of accident or mistake, which must be proved by decisive evidence, or the contract must have been procured by the fraudulent misrepresentation of the other party, under the rules of law already given you in charge. In all cases to afford relief there must be fraud and damage both united; to illustrate, if the plaintiff represented the pipe to be larger than it is, in order to afford relief, the defendant must have been damaged, and the damage must be proved to you by the evidence in the case. If the defendant had free access to the map of the works, and could have found out from the map the size of the pipes and the extent of the works, and did find out from the map, or failed to avail himself of

the means of information at hand, if any, he has no one to blame but himself.

"It will not avail the plaintiff that the defendant believed he did not intend to deceive, if the evidence shows that plaintiff did deceive defendant. Parol evidence is admissable for showing fraud, the procuring of a written contract; and if a contract, though in writing, is procured to be made or induced by fraud, the jury may set aside the contract.

"Wilful misrepresention of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support such an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element; a fraudulent or reckless representation of a fact as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood. A proper construction of this section of the Code is this: If a misrepresentation was made it must have been material, and some damage must have been the result. If any concealment has been charged and proven, it must have been of a material fact, and the concealment must have been of a material fact, and it must have been done in a manner actually to deceive or mislead. If any deceit is charged and proven, it must be made to appear to the satisfaction of the jury that the statement was known to be false.

"If any fraudulent or reckless representations were made by Mr. Newton which he did not know to be false, then they must have been made to deceive Smith. If the jury is satisfied from the evidence that Yeiser built these gas works, and was superintendent at the time of the sale, was referred by Mr. Newton, as a proper person to give the necessary information, and Smith applied to him for information; and, if it further appeared from the evidence that Mr. Smith did go to Yeiser for information, an did get information touching the size of the pipe and the length and the value of them, and still, in the face

of this information, made his purchase from Newton, then he (Smith) cannot complain that he was misled by Newton in reference to the value of the works; and the jury would not be authorized to find in favor of the defendant in any matter which involves the value of the works. If in their negotiations about the sale of the one-fourth interest in these works by Newton to Smith, anything was said about the employment of Smith as superintendent, all these stipulations are supposed, in law, to be merged in any written contract subsequently made in reference to that matter; and unless it is shown to the satisfaction of the jury, that Newton perpetrated a fraud in the execution of that written contract, no new stipulation can now be injected into it. It was the duty of Smith at the time the written contract was executed, to have had all the stipulations agreed on inserted, and if he failed or omitted to do so without any fraud on the part of Newton to have it done, he is bound by the written contract as it appears in evidence. If from the evidence the jury is satisfied that Newton instructed Smith to go to proper sources for information as to the condition of the works, and the amounts due and owing, and Smith omitted to go or declined to go for the information, then he cannot hold Newton responsible, but must take the consequences of his own action in the premises.

"If the defendant went to Yeiser to ascertain the value and cost of the works, and Yeiser informed him what they were worth, and afterwards the defendant told plaintiff what Yeiser had said in reference to the value or cost of said works, and the plaintiff then told him not to heed what Yeiser said, or words to that effect; because Yeiser was interested in holding his place as superintendent, which he knew he would lose if defendant bought, or words of that kind, then the jury may take into consideration such conversation in ascertaining whether the defendant was thrown off his guard by the plaintiff's statement in this respect, and

induced to disbelieve what Yeiser had said, and whether he was thereby misled by the plaintiff.".

The Code contemplates two classes of fraud—moral fraud and legal fraud—and, according to the defendant's own evidence, the alleged fraud in this case belongs to the latter class, for he stated at the trial, on his cross-examination, that "he did not believe Mr. Newton wilfully misrepresented the facts, and don't believe so now, but think he ought to have known, as I relied on his representations."

There was no error in the charge of the court in relation to the written contract between the parties being the highest and best evidence as to what that contract was, and that parol evidence was not admissible, to add to or contradict it, on the statement of facts disclosed in the record. There is no pretense that the written contract between the parties, including that in reference the defendant's salary as superintendent, was not written just as the parties intended it should be written when the same was executed. See 54 *Ga.*, 289 ; 56 *Ga.*, 32.

6. Although the charge of the court as to the distinction between moral and legal fraud was not as clearly defined. as it might have been, still it was substantially correct, and fairly submitted the general principles of the law as to legal fraud applicable to the evidence in the case. The court charged the jury "that misrepresentation of a material fact, made recklessly without knowledge, and acted on by the opposite party, constitutes legal fraud. It will not avail the plaintiff that the defendant believed he did not intend to deceive, if the evidence shows that plaintiff did deceive defendant." The general charge of the court was sufficiently broad to cover the alleged misrepresentation of the plaintiff as to the net profits of the gas works..

7. But if there had been errors in the charge of the court, as claimed by the plaintiff in error, still the verdict was right under the evidence, and could not well have been otherwise under the law applicable thereto. The defendant says in his own testimony, that he went to Yeiser, the superintend-

ent of the gas works, who built them, before he purchased, and got all the information he could, and that he told him they were not worth over $12,000, but that the plaintiff had said so much about the gold mine, etc., he could listen to no one else.  Collier testified, that in November, 1874, when he, with others, was negotiating for the purchase of the Rome gas works, the defendant represented them to be worth every dollar of $30,000, and said that if he understood the business as well as he (witness) did he would not consent to sell said works for anything less.  However witnesses may be mistaken in their recollection as to facts, after the lapse of time, there were several letters of the defendant to the plaintiff, written after he became superintendent of the gas works, and had had ample opportunity to know all about them, in which he expresses his sentiments quite freely as to their value, and about which written evidence there can be no mistake.  The purchase was made in April, 1872.  On the 31st of July thereafter he writes : " I have concluded to advertise my gas stock for sale at $7,000, but will wait until I hear from you.  I am willing to keep it, and know there is money in it.  I know the works are worth more to-day than when I bought them."  In April, 1873, defendant writes " that the works are in good order, doing well; am willing to sell my interest on basis of $40,000 cash ; you can do as you like.  The works are cheap at $35,000."

There is a good deal of other evidence in other letters written by the defendant to the plaintiff on pretty much the same line until January, 1874, but not one word is said or written by the defendant, up to that time, about a rescision of the contract for fraud, either moral or legal, on the part of the plaintiff, in the sale of the gas works to him.  If parties who are *sui juris* will not take care of themselves in making their contracts, in the absence of either moral or legal fraud, as the jury have found by their verdict in this case, they have no right to expect that the courts will take care of them.  There was no error in overruling the motion for

a new trial on the statement of facts disclosed in the record. Let the judgment of the court below be affirmed.

JACKSON, Judge, concurring.

Without approving all the rulings of the court on evidence and in the charge to the jury, I concur in the judgment, for the reason that the facts—the letters of Smith himself—make such a case as requires the verdict.