## EDWARDS v. CAPPS.

1. The contract declared on was not ambiguous, but evidenced an agreement on the part of the defendant to buy stock in a commercial enterprise belonging to the plaintiff, not a mere option to buy.
2. The question whether or not the contract was tainted with usury was not presented by either the pleadings or the evidence.
3. A charge which correctly presents the law bearing on the defendant's theory of the case can not be held erroneous simply because the court did not, in the same connection, instruct the jury as to the plaintiff's contentions.

Submitted April 14,—Decided May 11, 1905.

Complaint.    Before Judge Kimsey.    Habersham superior court.    January 23, 1905.

*Robert McMillan* and *H. H. Dean*, for plaintiff.
*J. B. Jones*, for defendant.

EVANS, J.    This was a suit brought by W. C. Edwards against T. A. Capps for an alleged breach of contract.    The trial of it resulted in a verdict for the defendant.    The plaintiff made a motion for a new trial; it was overruled, and he excepted.

1. The contract declared on was in writing and was expressed as follows:    "This agreement, made and entered into between T. A. Capps, of the first part, and W. C. Edwards, of the second part, both of Toccoa, Ga., Habersham county, witnesseth:    That T. A. Capps, of the first part, for and in consideration of the fact of W. C. Edwards subscribing sixty-five hundred dollars to Capps Cotton Mill, of Toccoa, Ga., T. A. Capps agrees to buy W. C. Edwards' stock above at the expiration of three years, paying sixty-five hundred dollars with ten per cent. interest from date paid in; in case T. A. Capps buys the stock, he, T. A. Capps, to have all dividends that may accrue to date of sale.    It is further agreed that if T. A. Capps desires to buy stock above of W. C. Edwards at the expiration of three years, W. C. Edwards agrees to sell on above terms mentioned.    It is further agreed that after mill begins operation, mill is to issue checks payable at both W. C. Edwards' and T. A. Capps' stores."    This writing was signed by both of the parties and attested by a witness.    In his answer the defendant admitted the execution of this paper, but alleged that it was merely an option and was not intended to evidence an obligation on his part to buy the stock, unless he should elect to

do so. The court held that the writing was ambiguous, and submitted to the jury the issue as to what was the understanding and agreement between the parties. This ruling is assigned as error.

Given a reasonable intendment, the writing evidences a binding obligation on the part of Capps to buy the stock of Edwards, and not a mere option to buy. It recites, as the consideration moving to Capps, the fact that Edwards had subscribed to sixty-five hundred dollars of the stock of Capps Cotton Mill, and that, for this reason, "Capps agrees to buy W. C. Edwards' stock," so subscribed for, at the expiration of three years, at a stipulated price. It further provides that "in case T. A. Capps buys the stock," but not otherwise, he is "to have all dividends that may accrue to date of sale." Were Capps to have an option to buy simply, it would seem that the contract would have been so drawn as to recite the consideration upon which Edwards agreed to give Capps an option. If an option was intended, then the agreement of Edwards to sell would have to rest upon a consideration moving to him from Capps, not upon a consideration which Edwards himself furnished by subscribing to stock in the cotton mill. To construe the writing as an option is to ignore the consideration which it recites as coming from Edwards and to render it a nude pact. The writing was signed by both parties, and the presumption is that they intended that each should be bound by mutual promises and obligations. The recital that Edwards "agrees to sell on above terms mentioned" at the expiration of three years, if Capps then *desires* to buy the stock, is consistent with the idea that Capps wished to bind Edwards to sell, in the event the enterprise proved a big success and at the end of three years Edwards might think it to his advantage to hold on to his stock and relieve Capps from his obligation to buy. In other words, the contract may be thus analyzed : Edwards, by subscribing to the stock, furnished the consideration for Capps' agreement to buy, and the writing so stated. Had it gone no further, Capps would be bound to buy (having already received the consideration for his promise to do so), whereas Edwards would not be bound to sell, not having obligated himself to do so, but having merely parted with the consideration which induced Capps to agree to buy if called on to do so. There would be no occasion for any one save Capps to sign such an agreement. But the

writing went further and was signed by Edwards as well, evi-
dently with a purpose. That purpose was to bind Edwards to
sell, if it was to Capps' advantage to buy and he desired to do so,
upon the identical terms on which he agreed to purchase in the
event Edwards should elect to hold him to his contract. While
the agreement was not artistically drawn, its meaning is, we think,
sufficiently clear to relieve it of the criticism that it was too
ambiguous to admit of reasonable construction and interpretation.
If we are correct in so holding, then it follows that the trial judge
should not have admitted testimony offered to explain what the
contract really was, as contended by the defendant, or any parol
evidence tending to add to, vary, or contradict the terms of the
writing.

2. The court also called on the jury to determine from the evi-
dence whether the parties contemplated that Capps should pay
$6,500 for the stock, with a premium of ten per cent. on that
amount added, or the purchase-price of the stock paid by Edwards
together with an additional amount equal to interest upon the
purchase-price at the rate of ten per cent. per annum. In this
connection, the court also instructed the jury that if the contract
evidenced a loan of money, instead of a contract of sale of the
stock belonging to Edwards, and the agreement was that Capps
should pay interest at the rate of ten per cent. per annum, then
the contract would be tainted with usury and could not be en-
forced by the plaintiff. The charge was not adjusted to either
the pleadings or evidence in the case. In the first place, the jury
should not have been left to decide what the contract was in this
respect; it was unambiguous, and provided that the price Capps
was to pay for the stock should be equal to its face value, $6,500,
and interest on that sum from the date it was paid for, at the rate
of ten per cent. As interest is, unless there be a stipulation to
the contrary, payable annually when the rate to be charged is
fixed at a specified per cent., the evident meaning of the contract
is, not that Capps should pay a bonus of ten per cent. on the par
value of the stock, but an amount, in addition to its par value,
equivalent to ten per cent. per annum upon $6,500 from the date
the stock subscription was paid. It was perfectly competent for
the parties to agree upon this method of fixing the precise
amount Capps was to pay for the stock, provided they contem-

plated a bona fide sale thereof. *Felton v. Grier*, 109 *Ga.* 320. Of course, such a writing might be a mere coat for a usurious transaction. But the defendant in his plea did not plead that such was the truth in the present case, and the evidence disclosed that there was, in point of fact, no loan of money made by Edwards to Capps.

3. In defense to the action, Capps pleaded a want of consideration for his promise to purchase Edwards' stock, alleging that it was after Edwards had bound and obligated himself in writing to take $6,500 of stock in the cotton mill that the contract sued on was entered into. In charging upon this branch of the case, the court correctly instructed the jury that if they believed this defense was sustained by evidence, and there was really no consideration for the contract, then the mere fact that a consideration was recited in the writing would not affect the liability of the defendant. Complaint is made that this charge ignored the contention of the plaintiff, sustained by his testimony, that while he had signed the subscription list before the contract was drawn up, the understanding was that he was not to be bound to take the stock unless Capps signed such a contract. As has many times been ruled, a charge which is not only abstractly correct but adjusted to one of the issues in a case can not be held erroneous simply because the court did not, in the same connection, give another pertinent instruction presenting the theory insisted on by the complaining party. If the court fails to fairly present his side of the case, then exception to such omission should be taken.

*Judgment reversed. All the Justices concur, except Candler, J., absent.*