*A. L. Franklin* and *B. B. McCowen,* for plaintiff.
*Joseph B. & Bryan Cumming,* for defendant.

---

## CAPPS *v.* EDWARDS.

1. The petition set out a cause of action as against a general demurrer, and the court did not err in refusing to dismiss the same on oral motion made at the trial term.

2. The petition, considered in its entirety, is a suit by the vendor of stock in an incorporated company against the vendee, evidenced by a written executory contract of sale, for recovery of the value of the stock contracted to be sold.

3. Parol negotiations eventuating in an unambiguous written contract are merged in the writing, and are ineffectual to vary or contradict the writing.

4. Fraud, to be the basis of rescission or reformation of a contract, must be fraud in the execution thereof; and when it is attempted to annex to the writing a parol conditional stipulation, it must appear that such

stipulation was omitted from the writing, at the time of execution, through fraud, accident, or mistake.

Argued June 9, 1907.—Decided February 22, 1908.

Action on contract. Before Judge Kimsey. Stephens superior court. November 9, December 3, 1906.

The petition of W. C. Edwards against T. A. Capps alleged, in substance: T. A. Capps was largely interested in the organization of the Capps Cotton Mill, of Toccoa, Georgia, is its largest shareholder, and has been its president from the time of its organization in 1900. On March 1, 1900, the plaintiff entered into a contract as follows: "This agreement, made and entered into between T. A. Capps, of the first part, and W. C. Edwards, of the second part, both of Toccoa, Ga., Habersham county, witnesseth: That T. A. Capps, of the first part, for and in consideration of the fact of W. C. Edwards subscribing sixty-five hundred dollars to Capps Cotton Mill, of Toccoa, Ga., T. A. Capps agrees to buy W. C. Edwards' stock above at the expiration of three years, paying sixty-five hundred dollars with ten per cent. interest from date paid in; in case T. A. Capps buys the stock, he, T. A. Capps, to have all dividends that may accrue to date of sale. It is further agreed that if T. A. Capps desires to buy stock above of W. C. Edwards at the expiration of three years, W. C. Edwards agrees to sell on above terms mentioned. It is further agreed that after mill begins operation, mill is to issue checks payable at both W. C. Edwards' and T. A. Capps' stores." (Signed by the parties.) In pursuance of this contract, the plaintiff purchased 65 shares of the stock mentioned, paying $6,500 for it; and at the expiration of the time limit of three years fixed by the contract he tendered the stock to Capps, and requested Capps to take it and pay for it in accordance with the contract, but Capps refused to do so. Copies of the stock certificates issued to the plaintiff are set out. It is alleged that the said refusal by Capps caused a breach of the contract and rendered him liable to the plaintiff for $6,500 principal and 10 per cent. premium thereon. The plaintiff, by his petition, continues his tender of the stock and demands of Capps a compliance with the contract, and prays that the court "require said Capps, by decree, to accept and receive said stock and pay . . . petitioner the agreed price thereon; with ten per cent. premium due thereon, according to the terms of said contract; that said

contract be specifically enforced, if possible, and that . . petitioner have judgment against said Capps for said . . sum, . . and that execution issue in terms of the law; that if for any reason specific performance can not be decreed, . . petitioner prays judgment against said Capps for damages by reason of the breach of said contract, and lays his damages at the sum of $10,- 000, and prays judgment for said sum." Wherefore petitioner prays for process, for judgment as prayed for, and for general relief.

The defendant answered, admitting the allegations of the petition, except as to his liability, and averred, in substance: The plaintiff was the organizer of the movement to build the mill, and induced the defendant to go into the business, and had, before the making of the contract in question, bound himself, by written subscription, to take and pay for $6,500 of the stock of the mill, and the contract sued on was without consideration and void. It was merely an option and was not intended to be binding. The defendant was induced to sign it, by the plaintiff's representations that he had large experience in the cotton-mill business, and would quit traveling and ".get in behind the business and give it his personal attention, and would guarantee it to make from 20 to 40 per cent. on the stock," "defendant never dreaming that he would be called on or expected to take the stock, except the mill made from 20 to 40 per cent." The plaintiff did not comply with any of these promises. They were made fraudulently, for the purpose of inducing the defendant to make the said contract; the said paper was procured by fraud, and is void. If the plaintiff had done as he agreed to do, the mill might have made from 20 to 40 per cent., and the defendant would then have taken the stock. Nothing has been made by the mill. The defendant has been damaged in the sum of $10,000, by the failure of the plaintiff to comply with his contract aforesaid, and the defendant pleads this by way of recoupment. He prays that the paper be reformed so as to show the agreement in full. By amendment he averred, that, believing and relying on the plaintiff's said representations, he entered into the said contract, being at that time a subscriber to $20,000 in shares of said mill; and, having continued to be a shareholder to at least that amount, he was vitally interested in the said promises of the plaintiff, and was deceived and defrauded by them.

The first trial of the case resulted in a verdict for the defendant. The case came to the Supreme Court, on exceptions to the refusal of a new trial, and the judgment was reversed. (See 122 *Ga.* 827.) On the second trial, the plaintiff moved to strike all of the defendant's answer except the paragraphs admitting the allegations of the petition. The motion was overruled, and to this ruling the plaintiff filed exceptions pendente lite. Counsel for the defendant stated that the facts alleged in the plaintiff's petition were admitted; and they were allowed to open and conclude the case before the jury. At the conclusion of the evidence and of the argument to the jury, counsel for the defendant made an oral motion to dismiss the case, on the ground that the petition set forth no cause of action. This motion was overruled. There was a verdict for the plaintiff, for $6,500 principal, besides interest. Two bills of exceptions were filed by the defendant, one excepting to the overruling of the motion to dismiss the case, and the other to the overruling of his motion for a new trial. The plaintiff assigned error on the overruling of his motion to strike the defendant's answer to the extent stated.

*J. B. Jones, H. H. Perry, R. A. Naves,* and *J. W. Owen,* for plaintiff in error. *H. H. Dean,* contra.

ATKINSON, J. 1. An oral motion to dismiss the plaintiff's case, because no cause of action is set out in the petition, may be made at any stage before verdict. *Kelly* v. *Strouse,* 116 *Ga.* 872 (1). If a defendant neglects at the appearance term to point out any particular defect by way of written demurrer, the whole petition, including the exhibits, will be examined to ascertain whether a cause of action is set forth. The question, in an oral motion to dismiss, is not whether any particular allegation has been defectively pleaded, but whether the petition in its entirety fails to set out a cause of action. It was insisted, on the oral motion to dismiss, that the consideration for the promise is alleged to be the plaintiff's subscribing $6,500 to the Capps Cotton Mill, and that there is no allegation in the petition that the plaintiff had subscribed to any stock. It is true it is not alleged in totidem verbis that the plaintiff had subscribed to stock in the Capps mill, but it does appear that, acting upon the agreement, he procured the company to issue to him the amount of stock for which he was obligated to subscribe, and for which he paid the company its par

value, and that the stock was issued subsequently to and in pursuance of the contract, and a certificate issued by the Capps Cotton Mill to the plaintiff. The issuance of the stock necessarily presupposes that there was an application for the same; and it is immaterial, after the issuance of the stock, whether the application was made verbally or by a written stock subscription, as the whole purpose of the subscribing to the stock is to render the subscriber liable to the corporation and bound to take the stock. When the stock has been issued and paid for, the question of stock subscription becomes immaterial.

2. Although the petition prays for the specific performance of the executory contract of sale, and, alternatively, that, if this relief can not be afforded, he recover damages, yet it is clear, from the allegations of the petition and from its general structure, that the suit is for a breach of the executory contract of sale declared upon. The petition sets out a written agreement whereby the plaintiff agreed to sell 65 shares of corporate stock for a stipulated amount at a certain time, and the defendant agreed to buy upon those terms. The tender of the stock is alleged, and the refusal of the defendant to comply with the terms of his contract and buy the stock is also alleged; and the suit, therefore, is to recover the value of the stock according to the terms of the contract.

3, 4. Several paragraphs of the plea, relating to the history of the stock subscription of the Capps Cotton Mill, and especially that paragraph which alleges that the subscription of the plaintiff to the $6,500 of stock had already been made at the time the contract sued on was entered into between the parties, and for that reason the contract was nudum pactum, should have been stricken, for the reason that when the case was formerly before this court (122 *Ga.* 827), it was held that the contract sued on was not ambiguous, and comprehended an agreement on the part of the defendant and the plaintiff for the sale of stock in a commercial enterprise. The agreement to sell furnished the consideration for the agreement to buy. The remainder of the answer, which alleges that certain negotiations were pending between the plaintiff and the defendant prior to the execution of the contract declared upon, as furnishing a basis for recoupment, should have been stricken, for the reason that all prior negotiations are merged into the subsequent written contract. The allegations are not

sufficient as an attack upon the contract on the ground of fraud, because fraud, to be the basis of rescission or reformation of a contract, must refer to fraud in the execution thereof. A written contract will not be rescinded or reformed because of the omission of any antecedent parol condition or stipulation, unless it is alleged that it was omitted at the time of the execution of the contract, through fraud, accident, or mistake. *Smith* v. *Newton,* 59 *Ga.* 113. See also *Arnold* v. *Malsby,* 120 *Ga.* 586. From what has just been said it follows that all that part of the answer which the court refused to strike, and of which complaint is made in the bill of exceptions, should have been stricken on demurrer. The answer admitted the allegations of the petition, except as to the defendant's liability; and, inasmuch as such allegations set out a cause of action, it would have been proper for the court, after striking the objectionable parts of the answer, to direct a verdict in favor of the plaintiff: this upon the ground that there would be no issue between the parties. Therefore any possible error committed on the trial would be harmless, and need not be considered.

*Judgment in both cases affirmed. All the Justices concur, except Holden, J., who did not preside.*