## 244.²   WILKINS *v.* FULCHER.

1. The owner of land, in parting with its possession to another person, may make such conditions and reservations in the contract as he chooses and as the parties may agree upon. He may make a contract in the nature of a bond for title, wherein it is stipulated that if the would-be vendee does not pay one or more of the purchase-money notes at maturity, this shall result in a rescission of the contract and the establishment of the relationship of landlord and tenant; and it is further permissible for the parties to agree that in the event of such rescission of the contract because of failure of the executory vendee to comply with the terms of purchase, the rescission shall be retroactive to the extent that the relationship of landlord and tenant shall be considered as having existed through the year in which the default occurred. *De Vaughn* v. *Howell*, 82 *Ga.* 344 (9 S. E. 173, 14 Am. St. R. 162).

2. Rescission involves the duty of restitution. Hence, where a landowner, in making an executory sale of land, reserves the right to rescind the sale and to cause the relationship of landlord and tenant to arise between him and the person admitted into possession under the contract, he must first account to the vendee for the amount of any payments made on the purchase price and for the value of such improvements as the vendee has put upon the land (*Blitch* v. *Edwards*, 96 *Ga.* 606, 24 S. E. 147); but, this being done, he may force the rescission and cause the relationship of landlord and tenant to arise, according to the terms and in the manner and plan stipulated for in the contract; and if one of the terms of the contract between the parties is that upon a rescission the tenancy shall be retroactive, the law will enforce such a provision and give the landlord a special lien upon the crop raised upon the land during that year.

3. The vendor and the vendee in an executory sale can not, by a new and distinct contract of rescission, convert their relationship into that of landlord and tenant, so as to affect the intervening rights of third persons. But where, in the contract as originally made, the rescission is provided for, and it takes place in accordance with the original agreement, third persons can not complain that the effect of the rescission is to impair or diminish special rights which they would have had if the parties had carried out the contract as originally intended, instead of rescinding it, unless the rescinding person has done something which would make it unconscionable for him to exercise the right as against the particular third person whose rights are likely to be affected. In this case the complaining third person voluntarily became the creditor of the conditional vendee after he had full notice of the exact nature of the rights which the landowner had reserved in parting with the possession of his land; indeed, this third person himself had participated in forming the contract between the parties, and is in no position to complain because the landowner, in his capacity as landlord, by virtue of the rescission which ensued, is enforcing a landlord's special lien against the crops raised on his lands.

DECIDED FEBRUARY 25, 1911.

Distribution of money; from city court of Waynesboro—Judge Davis.  January 14, 1910.

*H. J. Fullbright,* for plaintiff in error.

*E. L. Brinson,* contra.

RUSSELL, J.  This case was tried in the lower court upon an agreed statement of facts.  Edwin Fulcher sold to one Wimberly a tract of land, which was to be paid for in partial payments, covering a period of several years.  The notes represented the purchase price, each maturing on the 1st of November.  As a part of the same contract Wimberly expressly agreed that if he failed to pay the first note, which was due November 1, 1909, or any subsequent note as it might mature, he would pay rent "for that current year" for the use of the lands; the rent to be 1,600 pounds of middling lint cotton.  This would have authorized Fulcher to rescind the contract of sale for default, and to foreclose his lien as landlord, at any time after November 1, 1909.  Under the contract he could not enforce any lien until there was a rescission, in the event of Wimberly's default in the payment of the notes; and each of the notes matured on November 1.  Perhaps the possibility of what has occurred was foreseen by the contracting parties, for the contract between Fulcher and Wimberly expressly provides that "immediately, when either of said notes may become past due and unpaid, the relation of landlord and tenant between said parties shall arise, and the landlord's lien for rent shall come into being, with full right on the part of Edwin Fulcher to distrain for rent as fully as if a contract of rental had been made at the beginning of said year."  When the contract was executed on November 11, 1908, the plaintiff in error, Wilkins, was present and participated to such an extent in framing its stipulations that he suggested that the rent required to be paid in case there was default in the payment of the purchase-money notes should be 1,600 pounds of lint cotton, instead of 2,000 pounds, which Fulcher had first required.  Thereafter Wilkins made advances to Wimberly to aid in making his crop, which were secured by a mortgage on the crop.  This mortgage was foreclosed on October 28, 1909, and the fund in dispute is the result of the sale under the foreclosure.  Fulcher claims that the fund is subject to his superior lien as landlord.  The question in the case is: Which has the superior right to claim the fund, Wilkins' mortgage,

or the landlord's lien foreclosed by Fulcher? This issue was submitted by agreement to the judge of the city court of Waynesboro, who awarded the fund to Fulcher, and Wilkins excepts.

It is not denied that the contract entered into between Wimberly and Fulcher regarding the purchase of the land, but which provided that, in the event Wimberly defaulted in the payment of any of his notes at maturity, the sale should be abrogated and Wimberly should pay rent at the rate of 1,600 pounds of lint cotton, is a valid contract. There is no reason why such a contract may not legally be made. It is insisted, however, that even if, under the contract, Fulcher would be entitled to foreclose a landlord's lien upon the crop on the rescission of the conditional sale, still the lien of Wilkins' mortgage fi. fa., foreclosed October 28, is superior to Fulcher's lien as a landlord, which was not foreclosed until November 2; in other words, that the lien of the landlord for rent should only date from the levy of the distress warrant, because up to November 1 Wimberly was a purchaser. We are of the opinion that it was in the power of the landowner, in parting with the possession of his land, to provide that if the purchase price was not paid as stipulated, the contract of sale should be rescinded and the relation of landlord and tenant arise as a substitute, and that he could also refuse to part with the possession, except on condition that the rescission should have a retroactive effect.

Of course, in the event of a rescission, Fulcher would have to repay Wimberly any payments made by the latter upon the land (or apply them upon the stipulated rent agreed to be paid by Wimberly), and would also have to pay him for any improvements put upon the land by him, because restitution and rescission must go together. But a rescission would relate back, as provided by the contract, and no one could complain, unless he was injured by an act of the landowner mala fide, because the landowner would have the right to deal with and dispose of his land as he pleased, and neither his right to his land and the crop raised thereon, nor his right to dispose of the land as he saw proper, could be affected by the rights of intervening parties, even if they did not have notice of the nature and contents of the contract by which the land was disposed of. If by fraud or misrepresentation Fulcher had induced Wilkins to sell to Wimberly, or to do any act to his injury, of course the case would be different; but it appears that Wilkins knew the true state

of the relations between his mortgagor, Wimberly, and Fulcher, the landowner.

The headnotes sufficiently state the legal incidents resulting from the relationships created by the contracts in evidence, and from the mortgagee's connection with the transaction; and for this reason further elaboration or discussion of the facts is unnecessary.

*Judgment affirmed.*