## 7037.  DIXON v. BOND.

1. In a suit upon promissory notes a prayer for the establishment of a special lien on real estate, conveyed as security for the payment of the debt evidenced by the notes, does not render the proceeding a "case respecting title to land;" and in such a suit the city court of Thomasville has jurisdiction to declare a special lien on the realty.

2. The trial judge did not err in striking the second paragraph of the defendant's original answer. A mere allegation that a note is wholly without consideration, and therefore null and void and unenforceable, amounts to nothing more than a plea of general issue, and is too vague and indefinite to constitute a proper plea of failure of consideration.

3. The amendment to the defendant's answer was insufficient to raise an issue as to fraud in the procurement of the notes in question, and the alleged plea of rescission, being merely an attempt to engraft a contemporaneous parol agreement upon a valid written instrument, without showing any reason for its omission from the written agreement, was properly stricken, after the trial court had afforded the defendant an opportunity to amend his answer and cure the defects pointed out by the plaintiff's demurrer.

4. After the defendant's answer had been stricken, and after the plaintiff had stricken his claim for attorney's fees, it was not error to render a judgment for the plaintiff for the principal and interest of the notes, and to adjudge that the judgment be a special lien upon the land described in the defendant's deed which was attached to the petition.

DECIDED MAY 1, 1916.

Complaint; from city court of Thomasville—Judge W. H. Hammond.  October 6, 1915.

*J. M. Austin, O. E. Hay,* for plaintiff in error.

*Titus, Dekle & Hopkins,* contra.

RUSSELL, C. J.  Bond filed suit against Dixon upon five promissory notes, and prayed a general judgment for the principal debt

and interest, "and that said judgment be decreed to be a first lien upon the property" described in the petition, which had been conveyed to the plaintiff by a deed of the defendant as security for the payment of the notes, and that "the said property . . be sold and the proceeds thereof applied to the payment of . . petitioner's judgment." Dixon appeared and duly filed a demurrer and an answer to the suit. The trial judge overruled the second paragraph of the demurrer, and exception is taken to that judgment. It was insisted in that paragraph of the demurrer that "plaintiff's suit and prayers should be stricken in so far as they seek a judgment or decree declaring the general judgment prayed for to be a special lien upon the alleged land, (1) because this court is without jurisdiction of such subject-matter, (2) because it is in effect foreclosing a- mortgage upon realty, (3) because it is a matter respecting title to land, (4) because it involves the granting of affirmative equitable relief, and (5) because it is mere surplusage and needlessly encumbers the record."

It must be admitted, of course, that a city court is without jurisdiction to grant affirmative equitable relief, and an appropriate special demurrer, directed to the word "decree," would perhaps have required that word to be stricken and the verbiage of the petition to be changed so that the petitioner would ask that the judgment be "declared" to be a first lien upon the property. However, the demurrer, so far as it was pertinent, was general in its nature, squarely challenging the jurisdiction of a city court to set up a lien upon real estate in an action upon promissory notes, secured by a deed to the realty, in which the jurisdiction of the court to render a judgment upon the notes was undisputed, and where the debtor had admitted creating at least an inchoate lien upon the property in favor of the plaintiff, by deeding it to him in accordance with the provisions of section 3306 of the Civil Code of 1910. In other words, the contention of the defendant in the lower court was that although the plaintiff might recover a judgment on his notes in the city court, he could not establish in that proceeding a lien upon the land conveyed to him to secure the notes, prior to the lien of other judgments against the debtor, except by proceeding to make a deed, reconveying the property to the debtor, and levying upon the land as the property of the debtor, although the deed might embrace (as it did in fact) an agreement

that the creditor might himself advertise and sell the land in satisfaction of the debt secured thereby. We think the trial judge correctly overruled this contention.

There is no merit in the point, raised by paragraph 2 of the demurrer, that the setting up of the plaintiff's lien would be in effect foreclosing a mortgage upon realty, nor in the proposition that to establish the lien would be to grant affirmative equitable relief. The rights of a creditor whose debt is secured by deed from the debtor are fixed by a statute, which, while declaring that such conveyances pass the title to the vendee, evidently intended them to be treated as mere liens, except as between the contracting parties, when the rights of third persons only are to be affected. A deed executed under the provisions of section 3306 of the Civil Code is absolute in the sense that nothing can intervene to prevent the creditor from collecting his debt if the property really belonged to the vendor and is sufficient for that purpose, and in the sense that the vendor is entitled, upon payment of the debt to have title reconveyed to him. But while deeds executed under that section are expressly declared not to be mortgages, it is plain that the legislature, by declaring that they pass absolute title, intended to create a lien of high dignity. The title passes only "till the debt or debts which the said conveyance was made to secure shall be fully paid;" but deeds to secure debts are to be attested as mortgages, they may be cancelled as mortgages are cancelled, and liens against the vendee as owner of the title, which by reason of the placing of the title in him would otherwise attach to the property, are not permitted to affect the vendor's right to a reconveyance or to become a cloud upon the property conveyed. Civil Code, § 3308 et seq.

In *Pusser* v. *Thompson,* 132 *Ga.* 282, Justice Lumpkin, harmonizing any apparent incongruity in the provisions in § 3306, which requires the courts to hold the security deed therein mentioned to be an absolute conveyance and not a mortgage, says (after referring to section 2723 of the Civil Code of 1895 (Civil Code of 1910, § 3256), which declares that "a mortgage in this State is only a security for debt, and passes no title"): "As a natural result of holding a mortgage to be a mere lien, other things might intervene and seriously interfere with the security. A power of sale contained in a mortgage was held to terminate upon the

death of the mortgagor. A year's support for the family or dower for a widow might claim precedence. In order to provide greater security for the creditor, and to prevent matters of the kind referred to from endangering the collection of the debt, the legislature provided that a conveyance of the actual title could be made, with bond to reconvey upon payment. Provision was also made by which the creditor, upon recovering judgment against his debtor, might file and have recorded a deed reconveying the property to the latter, and levy on and sell it for the debt; and priority was given to him, upon pursuing the statutory remedy, over other judgments against the debtor. It will be observed that this authorized the conveyance of title as security, somewhat analogous to the common-law mortgage. Upon non-payment, the creditor could proceed as above indicated, or he could bring ejectment against his debtor, and recover possession of the land. Still the substantial fact that this conveyance was for the purpose of security, and not to convey an indefeasible title, was recognized." Thus it will be readily seen that the usual establishment of a lien which is provided by statute, no matter what may be the proper name, is not the granting of affirmative equitable relief and for that reason outside of the jurisdiction of a city court.

The insistence in the third subdivision of the demurrer, that the court was without jurisdiction to declare that a judgment upon the plaintiff's notes should have a first special lien upon the land, because this would be a matter "respecting title to land" (Civil Code, § 6510), has been ruled adversely to the plaintiff in error. *Guarantee Trust &c. Co.* v. *American National Bank,* 15 *Ga. App.* 778 (84 S. E. 322). As pointed out in that case, it was held in *Wheatley* v. *Blalock,* 82 *Ga.* 406 (9 S. E. 168), that a proceeding to establish a lien on real estate is not a "case respecting titles to land." The same thing, in effect, was held by this court in *Young* v. *Germania Savings Bank,* 5 *Ga. App.* 130 (62 S. E. 999), and *Edenfield* v. *Bank of Millen,* 7 *Ga. App.* 645 (67 S. E. 896). There are many liens which may be asserted against property without regard to its ownership, though, of course, the true owner of the real estate could defeat any lien against the property which depended for its existence upon a conveyance by a vendor who had no title himself. A question such as this, however, is not presented when, as in the present case, only the vendor and the ven-

dee in a deed given to secure debt under the provisions of § 3306 are before the court.

2. The plaintiff demurred to the second paragraph of the defendant's answer, as originally filed, as insufficient to set up any defense. This paragraph was as follows: "For further plea and answer in this behalf, defendant shows the court that the alleged notes and deed were wholly without consideration, and are therefore null and void, and are unenforceable in this action." The passage of the Neal act emasculated pleas of general issue, and, as a consequence, "where, in an answer by paragraphs to a petition bringing suit on promissory notes, the defendant makes, in answer to one of the paragraphs, a general denial of the indebtedness, but such answer nowhere sets up any legal defense, answer is properly stricken on demurrer." *Thomas* v. *Siesel*, 2 *Ga. App.* 663 (7). See also *Johnson* v. *Cobb*, 100 *Ga.* 139 (2) (28 S. E. 72); *Pyron* v. *Ruohs*, 120 *Ga.* 1060 (5). The defendant's answer wholly failed to inform the court how or in what respect the consideration had failed, and therefore was properly stricken.

3. The defendant filed an amendment to his answer, in which amendment he alleged that the notes and the deed were given in consideration of a certain motorcycle, "and plaintiff's representations and promises in connection therewith, and without any other pretended consideration, . . the said notes and deed not speaking or purporting to speak the entire contract," and that the representations and promises, which were fully set forth in the plea, were in parol. The defendant then proceeded in the amendment to set forth various parol representations alleged to have been made by the plaintiff to induce the defendant to purchase the motorcycle, and averred that he purchased it upon these representations, relying upon their truth, when in fact they were false and known by the plaintiff to be false. In another paragraph of the amendment the defendant alleges that he would not have purchased the motorcycle but for an oral agreement on the part of the plaintiff that the defendant should take the machine and use it to his satisfaction, and if upon trial by the defendant it should not prove to be as represented, the trade should be cancelled and the defendant could return the machine to the plaintiff, and he would cancel the notes and deed and return them to the defendant. It is alleged that the defendant would not have executed the notes and deed

4

but for these promises. It is then alleged that the defendant tested the machine and found out that it was totally worthless and useless to fulfil the requirement or to do the work that the plaintiff had promised that it would do, and that as soon as the defendant learned the real condition of the machine and the falsity of the plaintiff's representations, he offered to restore the machine and demanded the return of his notes and deed. The defendant alleged that the plaintiff declined either to accept the return of the machine or to return to the defendant his notes and deed and repay a certain portion of the purchase-price paid by the defendant in cash. But after having alleged that defendant elected to rescind the trade, and that he held the motorcycle subject to the order of the plaintiff, the amendment to the answer proceeded to set forth a new contract, alleged to have been made between the parties, by which the plaintiff agreed that if the defendant would take the machine to the repair shop of one Manry, to be put in first-class condition at his expense, and if the machine did not then fulfil his previous representations, he would cancel and return to defendant his notes, deed, and cash, in accordance with the terms of the original agreement. The defendant alleges that he complied with the plaintiff's request, and himself paid the repair bill, but that the machine could not be made to work so as to comply with the original oral warranties by which he was induced to sign the writings which formed the basis of the suit. The answer prays: (1) that the trade, of which the alleged notes are a part be held to have been duly rescinded by the defendant; (2) that the contract be held to be unenforceable by the plaintiff because of his having first broken it by failing to comply with his promises; and (3) that the defendant recover from the plaintiff the sum of $28, this sum including the amount of the cash paid at the time of the trade and the amount of the repair bill.

In ruling upon the plaintiff's demurrer thereto and in the judgment dismissing the answer, the court held, as we think, correctly, that "said answer as a whole constitutes no valid defense at law." The notes in question recited that they were given "for value received." Omitting what is said in *Dinkler* v. *Baer*, 92 *Ga.* 432 (17 S. E. 953), touching this point, we refer to an apt statement of the parol-evidence rule, given in *Bullard* v. *Brewer*, 118 *Ga.* 918 (45 S. E. 711), as follows: "Where parties have reduced to writ-

ing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary the written instrument." The allegation in the defendant's answer was not sufficient to show fraud in the procurement of the contract; for apparently the parties traded at arm's length, and no reason is assigned why the defendant should have relied upon the plaintiff's representations rather than his own judgment, after making a test of the motor to see whether its carrying capacity was as represented. A maker of a note, when sued, always has the right to show by parol, if he can, a want or failure of consideration, but he will not be allowed to prove that his obligation to pay was dependent or conditional upon the promisee's compliance with a prior or contemporaneous agreement not expressed in the note, unless the execution of the note was induced by fraud, accident, or mistake. *Lester* v. *Fowler,* 43 *Ga.* 190; *Howard* v. *Stephens,* 52 *Ga.* 448; *Scaife* v. *Beal,* 43 *Ga.* 333; *Goodman* v. *Fleming,* 57 *Ga.* 350; *Haley* v. *Evans,* 60 *Ga.* 157; *Hirsch* v. *Oliver,* 91 *Ga.* 554 (18 S. E. 354); *Pryor* v. *Ludden & Bates,* 134 *Ga.* 289 (67 S. E. 654, 28 L. R. A. (N. S.) 267). Granting that the plaintiff made all the promises and representations alleged by the defendant, still no reason appears why the defendant should have given such blind credence to them as to put in writing the part of the agreement by which he himself was bound, while leaving all the cross-obligations of the plaintiff to depend upon a mere passing breath. "A false statement is not fraudulent when there is no reason why the statement should be believed and acted upon." *Branan* v. *Warfield,* 3 *Ga. App.* 586 (60 S. E. 325).

It is equally plain that the defendant's answer did not set up a good plea of rescission. As remarked by Chief Judge Hill, in *Mizell* v. *Banks,* 10 *Ga. App.* 363 (73 S. E. 410), "There is quite a difference between an attempt to contradict the terms of a contract by parol testimony under a defense that the contract has been breached, and an effort to have the contract rescinded because of fraud in its procurement." Still a failure to allege sufficient facts to show the existence of fraud is alike fatal to both defenses. The elementary rule applicable to the defenses which the defendant

sought to interpose in this case can not be more concisely stated than they are in *Capps* v. *Edwards,* 130 *Ga.* 146 (60 S. E. 455): "Parol negotiations eventuating in an unambiguous written contract are merged in the writing, and are ineffectual to vary or contradict the writing. Fraud, to be the basis of rescission or reformation of a contract, must be fraud in the execution thereof; and when it is attempted to annex to the writing a parol conditional stipulation, it must appear that such stipulation was omitted from the writing, at the time of the execution, through fraud, accident, or mistake."

So far as the plaintiff's promises after the maturity of the first note are concerned, it does not appear that there was any consideration in addition to the defendant's promise to pay as originally made by his notes; hence the promises in regard to repairs, etc., was nudum pactum. *Baldwin* v. *Daniel,* 69 *Ga.* 782-791.

*Judgment affirmed.*