## 16965. COLONIAL HILL COMPANY *v.* GREENOE.

1. Two parties entered into a contract the terms of which were substantially as follows: The party of the first part agrees to sell to the party of the second part a described parcel of land. "The party of the second part is to pay" for said lot a sum of money specified, $10 cash, and the balance in monthly installments of $10 each. The party of the second part has executed promissory notes representing "said deferred payments." Each of the notes is unconditional and recites that it is given as "part of the purchase-money" for the property. Default for 30 days in the payment of any note will mature the entire series. The party of the first part is to execute to the party of the second part a bond for title to the property on the payment of one third of the purchase-price with interest "on the deferred payments." In the meantime the party of the second part shall hold and control the property merely as a tenant. If the party of the second part shall, "during said term of tenancy, fail to meet within 30 days after maturity either of the notes hereinabove referred to, he agrees voluntarily to surrender possession of said land to the party of the first part, and in the event of his failure to so surrender said land, said party of the first part shall have the right, without previous demand or notice, to eject the said party of the second part from said land summarily as a tenant holding over." Until the party of the first part has become bound to make bond for title, the party of the second part "shall have no right, title, or interest in said land, but merely the right to use the same as tenant, and . . the amount of rent for said land shall be all of the moneys to be paid under this agreement during said time, together with accrued interest on the whole." Unless one third of the purchase-price is promptly paid as provided in the contract, "the party of the first part shall be under no obligation to execute such bond for title." If the party of the second

part shall hinder, delay, or obstruct the party of the first part in taking possession of the land for nonpayment of any "installment of money provided for by this contract," he shall be liable to the party of the first part for all costs and damages sustained by him. The party of the second part shall "pay at maturity all taxes properly assessed against said property." *Held:* The written agreement and the notes, when considered together, show an unconditional promise by the party of the second part to purchase and pay for the property.

2. The holder's delay in bringing suit upon the notes for approximately eleven years after maturity of the first installment and approximately five years after maturity of the last installment, and the fact that in the meantime the holder had paid all taxes upon the property from the date of the contract, would not show an election by the holder to rescind the contract because of the other party's default or otherwise.

3. Under the above rulings, the maker's plea to a suit upon such notes failed to set forth any valid defense. The municipal court properly sustained the plaintiff's general demurrer to such plea, and the judgment thereupon rendered by that court in favor of the plaintiff was without error. The superior court erred in sustaining the certiorari.

DECIDED SEPTEMBER 17, 1926.

Certiorari; from Fulton superior court—Judge Bell. October 26, 1925.

Application for certiorari was denied by the Supreme Court.

Colonial Hill Company, as transferee or indorsee, brought suit in the municipal court of Atlanta against Mrs. George P. Greenoe upon 68 notes for $10 each, made by her to the Cobbs Land Company. The instruments sued on were the unpaid notes of a series, 84 in number, each of which was unconditional and recited that it was given as "a part of the purchase-money" of a described lot of land. They were dated October 14, 1911, and were payable monthly. The suit was filed in April, 1924, after each of the notes had become due by its own terms. The defendant filed an answer in which she pleaded that the notes were executed simultaneously with, and should be construed in the light of, a contract between her and the Cobbs Land Company, a copy of which was set forth as an exhibit to the answer. This contract contained, among others, the following stipulations: The land company, as party of the first part, agrees to sell to Mrs. Greenoe, as party of the second part, a described lot of land, and Mrs. Greenoe is "to pay for said lot the sum of eight hundred dollars, ten dollars cash (the receipt of which is hereby acknowledged), and the balance in monthly installments of ten dollars each, bearing interest from date at the rate of 6% per annum, the first of said

monthly installments falling due on the 4th day of November, 1911, and of each month thereafter. The said party of the second part has this day executed in favor of the said party of the first part 84 promissory notes representing said deferred payments. Each of said notes, among other things, provides therein that at the option of the Cobbs Land Company each and all of said purchase-money notes shall fall due and become payable, without notice, if said note shall become due and remain unpaid as long as 30 days." "Upon the payment by the said party of the second part of one third of the purchase-price of said lot in addition to interest on deferred payments, the party of the first part is to execute to said party of the second part, or his assigns, a bond for title to the land above referred to, which bond for title shall be in the usual form and shall fairly set forth the terms of the purchase. Upon execution of such bond for title this contract is to be cancelled and to be null and void.

"It is expressly understood and agreed between the parties hereto that until one third of the purchase-price of said land, in addition to interest on the deferred payments, has been paid by the party of the second part, the said party of the second part shall hold, use, and control said land merely as a tenant of the party of the first part. In the event the said party of the second part shall, during said term of tenancy, fail to meet within 30 days after maturity either of the notes hereinabove referred to, he agrees voluntarily to surrender possession of said land to the party of the first part, and in the event of his failure to so surrender said land, said party of the first part shall have the right, without previous demand or notice, to eject the said party of the second part from said land summarily as a tenant holding over. It is distinctly stipulated and agreed between the parties hereto, that until the time for making bond for title herein named, the relation of landlord and tenant shall exist between the party of the first part and the party of the second part; and until under the terms of this agreement, the party of the first part is bound to make bond for title, the party of the second part shall have no right, title, interest, or equity in said land, but merely the right to use the same as tenant, and that the amount of rent for said land shall be all of the moneys to be paid under this agreement during said time, together with accrued interest on the whole."

"It is further stipulated and agreed between the parties hereto that from the date of this contract the party of the second part shall pay at maturity all taxes properly assessed against said property.

"It is distinctly agreed that time is of the essence of this contract and that unless each installment herein provided for be paid by the party of the second part to the party of the first part prioı to the time for making bond for title is promptly paid at maturity, the party of the first part shall be under no obligation to execute such bond for title. It is also agreed, that should the party of the second part hinder, delay, or obstruct the party of the first part in taking possession of said land for nonpayment of an installment of money provided for by this contract, he shall be liable to the party of the first part for all costs and damages sustained by said party of the first part in obtaining possession of said premises by law." The agreement was signed both by the land company and Mrs. Greenoe.

The defendant alleged that under this contract she was not bound to pay for the land if she elected not to do so; that she failed to pay any of the notes maturing on or after March 4, 1913, and also failed to pay any of the taxes thereon "for any year from 1911 to date," and that having paid only $160, less than one third of the agreed purchase-price, there was never any obligation on her part "to take and pay for the real estate mentioned, and no obligation on the part of the plaintiff to sell or carry out its part of the said written agreement, and that said notes and contract are therefore void and unenforceable." The plea further alleged: The Cobbs Land Company and the plaintiff acquiesced in the defendant's "breach and accepted the same by paying" all taxes due on the property from the date of the notes and contract. "Defendant shows that under the terms of said contract defendant agreed to surrender possession of the land in question in the event she failed to pay an installment 30 days after maturity; that since April 14, 1913, defendant has failed to pay any installment, and that she has never exercised any dominion over said land, and that it would now be inequitable and unjust to allow plaintiff to enforce the provisions of said contract as to paying rent, plaintiff having been guilty of laches in failing to act dur-

ing a period of eleven years to enforce his rights, and the plaintiff in the meantime having apparently accepted a constructive surrender of said land to it, and since said date assumed a dominion over the same by paying taxes, and during all of said period failed to call upon defendant for performance under said contract; and defendant shows that there has been a mutual abandonment of the rights and duties by all parties under said contract for a period of ten years." The Colonial Hill Company took the notes with notice of the facts relied on in defense.

The judge of the municipal court sustained a general demurrer to the defendant's answer, and entered judgment in favor of the plaintiff. The defendant carried the case to the superior court by certiorari. The certiorari was sustained and the plaintiff excepted.

*George B. Rush,* for plaintiff.

*William J. Davis Jr.,* for defendant.

BELL, J. (After stating the foregoing facts.)

1. The notes sued on and the written agreement simultaneously executed are, of course, to be construed as one contract. But when so construed and when examined as a whole, they show an unconditional promise on the part of Mrs. Greenoe to purchase and pay for the land. The stipulations upon which she relies to sustain her contention that she could terminate her obligation at will by default were evidently included for the purpose of affording remedies to the land company in case of her failure to pay. Whether the law would have allowed the land company or its transferee to measure its rights absolutely by the letter of the agreement, we do not have to decide in this case. The remedy which the transferee has seen fit to adopt is a suit upon the notes, and we think it is clear that the defendant's mere default could not be advanced as a bar against liability. The contract was not a mere *option* to buy. It was a *promise* to buy, and this is true irrespective of the entangled relations which some of its phraseology might have sought to create. Further discussion seems to be unnecessary in view of the following authorities, which we think are controlling: *Enterprise Distributing Corp.* v. *Zalkin,* 154 *Ga.* 97 (113 S. E. 409) ; *Edwards* v. *Capps,* 122 *Ga.* 827 (50 S. E. 943) ; *Lytle* v. *Scottish American Mortgage Co.,* 122 *Ga.* 458 (50 S. E. 402) ; *Griffith* v. *Collins,* 116 *Ga.* 420 (2) (42 S.

E. 743); *Finlay* v. *Ludden,* 105 *Ga.* 265 (2) (31 S. E. 180); *Blitch* v. *Edwards,* 96 *Ga.* 606 (24 S. E. 147); *Hays* v. *Jordan,* 85 *Ga.* 741 (2) (11 S. E. 833, 9 L. R. A. 373); *Oaks* v. *Singer Sewing Machine Co.,* 17 *Ga. App.* 517 (2) (87 S. E. 719); *Haag* v. *Rogers,* 9 *Ga. App.* 650 (72 S. E. 46). The conclusion announced above is not in conflict with the decisions of the Supreme Court in any of the following cases, cited by the defendant in error: *Allison* v. *Dunwody,* 100 *Ga.* 51 (2) (28 S. E. 651); *Reddick* v. *Hutchinson,* 94 *Ga.* 675 (21 S. E. 712); *Melson* v. *Dickson,* 63 *Ga.* 682 (36 Am. R. 128). In each of these cases the contract was materially different from the one here involved. Counsel for the defendant in error cite also the following cases decided by this court: *Manley* v. *Underwood,* 27 *Ga. App.* 822 (2) (110 S. E. 49); *Hodnett* v. *Mann,* 10 *Ga. App.* 666 (73 S. E. 1082); *Wilkins* v. *Fulcher,* 9 *Ga. App.* 68 (70 S. E. 691). It may or may not be that these cases are distinguishable from the present case. Suffice it to say that the decisions of the Supreme Court, where applicable, have priority as precedents. See especially *Finlay* v. *Ludden,* supra.

2. The plea failed to show a rescission by the plaintiff. The plaintiff's delay in suing and its payment of the taxes are the only bases for rescission set forth in the pleadings, and these are insufficient as a matter of law. There was no mutual abandonment of the contract merely in the defendant's failure to pay and the plaintiff's failure to sue. The plaintiff's interest in the security was sufficient explanation of its payment of the taxes, and no rescission would result from this act. Nor would it result from both of the facts pleaded. 27 R. C. L. 659, §§ 421, 429; 39 Cyc. 1381-92.

3. The defendant's answer set forth no valid defense. The municipal court was right in striking it and entering judgment for the plaintiff, and the superior court erred in sustaining the certiorari.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*