### THE WESTERN AND ATLANTIC RAILROAD *vs.* MEIGS.

[Jackson, C. J., being disqualified, Judge Lumpkin, of the Northern circuit, was appointed to preside in his stead.]

1. On the trial of a case brought by a widow against a railroad company to recover damages for the homicide of her husband, testimony to prove that the public had been constantly in the habit of walking on the tracks of defendant's road, at and near the place where the killing occurred, though it was neither a crossing nor other such place as the public had a right to be, was properly admitted.

2. Where one is killed by a locomotive in an incorporated city, ordinances of that city, requiring railroad companies to keep flagmen at certain street crossings and regulating the rate of speed at which trains shall pass such crossings, were properly admitted in testimony, when, in connection with other testimony, they bore on the question of the company's negligence at the place of the killing.

3. A request to charge that a railroad company was not liable for an injury to a trespasser upon its track, caused by an engine, unless it was shown that the acts of the company's servants in charge of the engine were wanton and malicious, or there was such gross negligence on their part as was tantamount to wilfulness, was rightly refused. In such cases, the said servants are required to use a degree of care which amounts to more than the mere absence of wantonness, malice or reckless disregard of another's safety.

4. The act, approved August 27th, 1879, entitled "An act to alter and amend section 2970 of the Code," repealed that entire section.

5. The amount of damages to which a widow is entitled from a railroad company for the homicide of her husband should not be reduced by any insurance on his life received by her.

6. It is not error for the court to instruct the jury upon the doctrine of contributory negligence and apportionment of damages in a case where the jury would be authorized, under the testimony, to find that both parties were at fault in occasioning the injury for which the action was brought.

7. After explaining to the jury the issues made by the pleadings, it is not error for the court to say the pleadings are not evidence, and what is stated in them is not to be considered by the jury as evidence. On the other hand, this is an entirely proper instruction.
8. On the trial of an action for damages, it is not error for the court to state to the jury that he uses the word "negligence" in the sense of "carelessness" in his charge to them, especially when the charge contains full and accurate explanations of all the legal degrees of diligence and negligence.
9. Whether or not a verdict is contrary to a specified charge of the court, depends upon the testimony applicable to the question to which the charge relates; and if that testimony is conflicting, and the jury believe the witnesses of one party, it does not follow that, at the instance of the other party, the verdict should be set aside as contrary to such charge.
10. This court will not review the verdict of a jury, or pass on the question whether it was or was not contrary to the evidence, when there was no motion for a new trial in the court below.

December 15, 1835. (Head-notes by the court.)

Railroads. Damages. Negligence. Charge of Court. Evidence. Husband and Wife. Words and Phrases. Verdict Practice in Superior Court. Before Judge Dorsey. City Court of Atlanta. September Term, 1884.

Mrs. Mary Frances Meigs brought suit against the Western and Atlantic Railroad for the homicide of her husband, William H. Meigs, laying her damages at $25,000.

The defendant pleaded the general issue; that the injury resulted from the want of ordinary care and diligence on the part of the deceased; and that he was a trespasser on the track of the defendant, and while there, was injured by his own failure to exercise due and ordinary care.

On the trial, the evidence was voluminous, and need not be stated in detail. It is sufficiently outlined in the decision to understand the nature of the occurrence. The plaintiff testified that, at the time of the homicide, her husband was in his forty-ninth year, and earned from twelve to eighteen dollars per week. There was a considerable amount of evidence *pro* and *con* as to the value of his life.

The jury found for the plaintiff $4,000.00. No motion

for a new trial was made, but the defendant excepted and assigned error on forty-two grounds. The following will show the rulings on which the decision is based :

(1.) That the court erred in overruling the objection made by defendant's attorney to the question asked by plaintiff's attorney to the witness, Fairbanks. " I want to ask you if people walk along the railroad along there ?"— said railroad track not being a highway or any part of one.

(2.) That the court erred in permitting plaintiff's attorney to ask the witness, Fairbanks, questions, and said Fairbanks to answer the same, over defendant's objections, to the effect that a great many people passed along there on the track frequently, every hour in the day, and very large numbers of them between the rails and between the ends of the ties; and that this had been going on for two years, and still continued.—The objection was that said property was not a public highway nor any part of one.

(3.) That the court erred in permitting plaintiff's coun·sel, over the objection of defendant's counsel, to introduce and put in evidence an ordinance·of the mayor and general council of Attanta, adopted July 18, 1831.—Said ordinance was objected to as irrelevant, and also as illegal. [This ordinance required the defendant to keep a flagman at the Foundry street crossing, and gave him the powers of a special policeman.]

(4.) That the court erred in permitting plaintiff, over the objection of defendant's counsel, to introduce and put in evidence the ordinance of the mayor and general council of Atlanta, section 768 of the Code of the city of Atlanta, 1883.—Said ordinance was objected to as irrelevant, and also as illegal. [This section required the keeping of a flagman at each of certain street crossings (Foundry street being among them), and made it a part of his duty to prevent trains from passing such crossings at a greater rate of speed than four miles an hour, and to protect the lives of persons passing along the streets at those points.]

(5.) That the court erred in refusing to charge the jury as follows: " The defendant had the right to the exclusive use of its tracks, except at crossings established by law, and its employès had the right to presume that plaintiff's husband, if shown to be a person of full age and capacity, walking on its track at some distance before the engine, would leave it in time to save himself from harm, and unless it be shown to you by the evidence that the acts of defendant's employés in charge of the engine were wanton and malicious, or there was such gross negligence as is tantamount to wilfulness on their part, then your verdict should be for the defendant."

(6.) That the court refused to charge as follows: " If plaintiff's husband was walking upon the track of defendant's road, at a place not a road crossing established by law, he was a trespasser thereon, and defendant would not be liable to plaintiff, unless it be shown to you by the evidence that the acts of its agents, acting within the scope of their duty, were wanton or wilful, or were so grossly negligent or careless that they evinced a reckless disregard of the safety of plaintiff's husband, or that they perceived the danger of plaintiff's husband in time to have avoided injuring him and made no effort to avoid doing so."

(7.) That the court refused to charge as follows: " If the evidence satisfies you that plaintiff's husband was killed by the trains of the defendant being run upon him, and that such killing amounted to a felony, plaintiff cannot recover, unless the evidence further satisfies you that the employés of the company, who caused the death of plaintiff's husband, have been first prosecuted for the felony, or some good excuse for the failure so to prosecute has been alleged and proved."

(8.) That the court refused to charge as follows: " If you find from the evidence that the plaintiff received life insurance money upon the death of her husband, you may consider the amount so received, and what income it is

producing, in arriving at the amount of damages you find for the plaintiff, in the event you should find that the plaintiff is entitled to recover against the defendant, under the rules of the law, as I have given them in charge to you."

(9.) That the court erred in charging the jury in this case, and upon the evidence introduced upon the trial thereof, as set forth in his charge in various places, that the damages might be apportioned or diminished in proportion to the amount of default attributable to the husband of plaintiff.—Defendant insists that if said Meigs, by the exercise of ordinary care, could have avoided the consequences to himself, even when caused by defendant's negligence, there could not be any recovery whatever against it.

(12.) That the court erred in charging the jury as follows : " But if, on the other hand, you should believe from the evidence in the case that the husband of plaintiff was guilty of some degree of negligence, but could not have avoided the injury to himself caused by the defendant's negligence, if you believe it was negligent, by the exercise of ordinary care on his part, you would be authorized to find damages against the defendant, but these damages should be diminished in proportion to the amount of default attributable to him, the husband of the plaintiff."

(13.) That the court charged as follows : " Now, gentlemen of the jury, I have stated to you the respective claims of the parties in this case.   What I have stated is but the pleadings; it is not evidence, and what is stated in the pleadings is not to be considered by the jury as evidence, but as pleadings.   You are to try this case by the evidence as it comes to you from the witnesses, and with that, under the law as given you in charge by the court, you are to arrive at the verdict."

(14.) That the court charged as follows : " The plaintiff charges, gentlemen of the jury, that her husband, William H. Meigs, was injured by the negligence of the defendant company, and when I use the term ' defendant company,'

I mean the railroad, its servants, agents and employés, because they represented the defendant company. Therefore, gentlemen of the jury, I will give you the definition of the term negligence as used in these instructions. Negligence, the law says, is a question for the jury, and as used in these instructions, is used in the same sense that the word carelessness would be used."

(15.) That the court charged as follows: " The law says, gentlemen of the jury, that the railroad company shall be liable for any damages done to the person, stock or other property by the running of the locomotive or cars, or other machinery of such company, or for damages done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. So you perceive, gentlemen of the jury, that when ever an injury is shown to have been committed by the running of the cars, or locomotive or other machinery of the railroad company, it is incumbent upon the railroad company to show that its servants and agents exercised all ordinary care, all ordinary and reasonable care and diligence, to prevent said injury, the presumption in all cases being against the company."

(16.) That the verdict of the jury and the judgment of the court are contrary to the law as laid down in the part of the charge of the court, which follows : " Ordinary diligence is defined to be that care and caution which any prudent person takes of himself or his property. The absence of such diligence is termed ordinary neglect. If the plaintiff in this case, gentlemen of the jury, if William H. Meigs, by ordinary care (and I have given the definition of ordinary care and diligence), if William H. Meigs, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, she is not entitled to recover."

(17.) That the court erred in adding to his charge, as

set forth in the next preceding assignment, the following words : " But in other cases the defendant is not relieved, although the plaintiff may, in some way, have contributed to the injury sustained."

(18.) That the court charged as follows: " In determining whether or not the agents of the defendant company were in the exercise of the ordinary diligence required of them, you will look to the evidence, all the evidence in the case, and see what was done, if anything, both by the employés of the defendant on the train that injured the deceased and the employés on any other train of defendant, all that they or either of them did, any notice given to deceased, either by ringing a bell, blowing a whistle, or the giving of other signals, and from all that took place, as shown to you in the evidence, say whether or not the defendant company exercised the diligence required by law, and if you believe that they did not so exercise such diligence, if you further believe that the deceased was killed while in the exercise of ordinary care on his part, then you would be authorized to find damages against the defendant, either full or partial damages, as you may believe she may be entitled to recover under the rules of law which I will give you further on in these instructions."

(19.) That the court erred in charging the jury as follows: " But if, as before stated, you believe from the evidence in the case that the husband of this plaintiff, William H. Meigs, was not guilty of a want of ordinary care in being upon the track of the railroad company, or in failing to regard the signals, if any such there were, and if you believe that he could not have avoided the consequences to himself caused by the defendant's negligence (if you believe the defendant was negligent), by the exercise of ordinary care, then you would be authorized to find damages against the defendant, either full or partial, as I will explain to you in the further instructions in this case."

(20.) That the verdict was contrary to law and evidence, and is excessive.

There were also numerous assignments that the verdict and judgment were contrary to certain charges of the court.

JULIUS L. BROWN, for plaintiff in error.

HOPKINS & GLENN, for defendant.

LUMPKIN, Judge.

On the 14th day of September, 1882, William H. Meigs was killed by a locomotive drawing a passenger train of the Western and Atlantic Railroad Company in the city of Atlanta. There were several tracks of railway at the place where the killing occurred, and it was a constant habit of the public to pass along these tracks at all hours. Deceased was walking on the main line with his back to the engine which struck him. On his right was a switch engine, somewhat in advance of the passenger engine, and moving in the same direction. The bells on both were ringing, and the whistle on the passenger engine was blown when in about 127 feet of the deceased. It is evident from the testimony that he attributed the signals to the switch engine, and did not seem aware of his danger from the other till it was too late to save himself. The place of the homicide was several hundred feet from the Foundry street crossing, which the train had passed, and the testimony is conflicting as to the rate of its speed when Meigs was struck, the plaintiff's witnesses making it from 12 to 15 miles an hour, and the defendant's witnesses estimating it from 8 to 10 miles an hour.

The widow of the deceased brought an action to recover damages from the company for this homicide of her husband.

1. There was no error in admitting the testimony relating to the habit of the public in walking on defendant's

tracks at and near the place where this injury happened. While this habit, even if acquiesced in by the railroad company, did not prevent the deceased from being a trespasser, it was a circumstance which the jury might properly consider in determining whether or not the persons in charge of the train showed proper diligence at the time the killing occurred. Railroad engineers should observe more caution in running at places where they know persons are likely to be on the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public.

2. The mayor and council of Atlanta adopted an ordinance, July 18th, 1881, requiring the Western and Atlantic Railroad Company to keep a flagman at the place where its track crosses Foundry street, and making his duties the same as those of the flagman at the Whitehall crossing, and also by another ordinance, which is incorporated in the city code, required all railroad companies using the tracks across Whitehall, Foundry and other named streets, to keep flagmen at the crossings, whose duty was to prevent all trains from passing them at a greater speed than four miles per hour, and to protect the lives of persons at these places. This ordinance also forbade engineers from running over these crossings at a greater speed than that above mentioned. The rule to regulate the admissibility of testimony is not derived from its value or weight, but its bearing on the case. Although the injury in this case occurred a considerable distance from the Foundry street crossing, the rate of speed with which the train passed that crossing and the ordinances above mentioned had some bearing on the question of negligence at the place where the deceased was struck, and were, therefore, properly admitted to go to the jury for what they were worth.

3. Defendant's counsel requested the court to charge the jury that a railroad company would not be liable for an injury to a trespasser upon its track, unless it was

v 74-55

shown that the acts of the company's servants in charge of the engine were wanton and malicious, or there was such gross negligence on their part as was tantamount to wilfulness.    It is undoubtedly true that the company would be liable, even to a trespasser, for wanton, malicious or wilful conduct on the part of its servants in running its engines, but the question presented is, shall this be the limit of the company's liability in such cases?    There is a full discussion of this subject by Mr. Justice Hall in the case of *The Central Railroad vs. Brinson*, 70 *Ga. Reps.*, 207.    Two justices presided in that case, and a new trial was granted, upon the sole ground of an error in the court's charge, concerning which both justices agreed, but that charge was not upon the question now under consideration.

Without discussing the differences of opinion between Chief Justice Jackson and Mr. Justice Hall, appearing in the decisions delivered by them, respectively, in the case just cited, we are satisfied that the opinion delivered by the latter, and upon which counsel for plaintiff in error in the present case relied, does not go to the extent claimed in the argument by said counsel.    On page 219, Mr. Justice Hall says : " Conceding this principle as to the right of the company to the exclusive use of its track, etc., except at crossings, it does not follow that, because a person thus wrongfully using this right-of-way is a trespasser and a wrong-doer, he thereby becomes ' altogether an outlaw,' to whom the company owes no duty whatever.    At the common law, in case of gross negligence or carelessness on the part of those in charge of the train, they are held liable for an injury inflicted, even on a trespasser.    6 Am. and Eng. R. R. Cases 1–17, and note to last page, which collects and classifies many of the American cases upon this subject, as well as upon the liability of the company, where the injury appears to be a mere wanton or malicious act upon the part of the employé."

On page 246, he says : " The term ' gross negligence,'

used in connection with such circumstances, has a relative, rather than an absolute and strict signification, and as thus used is the equivalent of acts which result from a failure to observe that ' ordinary and reasonable care and diligence' prescribed by our Code. It was certainly used in this connection in all the cases herein cited, including that of *Baston vs. The Georgia Railroad*."

In the case last mentioned, Jackson, J. (now Chief Justice), said: " Even a trespasser upon the track of a railroad is entitled to be protected from gross negligence. Human life is sacred, and if a human form appear on the road, walking or sitting, or lying down, some effort should be made to save life." 60 *Ga,* Reps., 340. While, therefore, railroad companies do not owe to trespassers the same degree of care and diligence which they are bound to exercise towards their passengers, or to the public generally, at crossings and such other places on their right-of-way as the public has a right to be, still they are liable, even to trespassers, for gross negligence, and it would be stating the rule too strongly to confine such negligence, as the charge requested sought to do, to acts of the company's servants amounting to actual wantonness or malice, or a reckless and wilful disregard of human life and safety.

4. Section 2970 of the Code read as follows: " If the injury amounts to a felony, as defined by this Code, the person injured must, either simultaneously or concurrently or previously, prosecute for the same, or allege a good excuse for the failure so to prosecute." The act to amend this section, approved August 27, 1879, declared that it should not " apply to torts committed by railroad corporations, or other incorporated companies, or their agents or employés, nor shall the same apply to natural persons." As no persons of any sort, either artificial or natural, were left, to whom the section could apply, the effect of the amending act was to strike it out entirely.

5. Damages to which a widow is entitled from a railroad company for the homicide of her husband should not be

reduced by the amount of insurance paid to her on his life. If her recovery could thus be reduced, it might be insisted that, where the husband's life was insured for more than she was allowed to recover under the law as its actual cash value, the company could claim a balance against the family of the deceased, on the idea that the killing of the husband and father was a positive pecuniary benefit to them.

6. It is proper for the court to give in charge to the jury the doctrine of contributory negligence and apportionment of damages in all suits of this character, when the testimony would warrant the jury in finding that both parties were at fault. Portions of the testimony in this case authorized this instruction to be given to the jury ; but even if the charge had not been so authorized, it resulted in no injury to the defendant, as it is manifest from the amount of the verdict, $4,000.00, that the jury did not intend to apportion the damages at all.

7. It appears from the charge of the court that he explained to the jury the nature of the pleadings, stating to them what was claimed by the plaintiff, and why, and what the defence was, and then added, " I have stated to you the respective claims of the parties in this case. What I have stated is but the pleadings, and is not to be considered by the jury as evidence. You are to try this case by the evidence as it comes to you from the witnesses, and with that, under the law as given you in charge by the court, you are to arrive at a verdict." These instructions were not erroneous, but entirely proper.

8. The court stated in his charge to the jury that he used the word " negligence " in the sense of "carelessness." This was not erroneous, especially as the court, in his charge, explained fully and accurately all the legal degrees of diligence and negligence, and instructed the jury that, under the law, it was their duty to pass upon all questions of negligence arising in this case.

9. There were a large number of assignments of error

in the verdict, alleging it to be contrary to certain specified charges of the court. The court, in several different charges, instructed the jury that, if certain things were true, they should find for defendant. In a number of other charges, he instructed the jury that, if certain other things were true, they should find for plaintiff. Whether the verdict was contrary to the court's charge or not depends, therefore, on the views the jury took of the testimony. The charge was full and very fair on all the issues made by the pleadings and proof. Both alternatives on every branch of the case were placed clearly before the jury, and it does not follow, because they deemed it their duty to believe the plaintiff's side and disbelieve the defendant's, that the verdict was contrary to the charge of the court.

10. There was no motion for a new trial in this case. The testimony was quite voluminous, but it is not deemed necessary to discuss it, as this court has no power to review a verdict, or pass on the question, whether it was contrary to evidence or not, unless a motion for a new trial, on this ground, is made and decided by the court below, in which event, it would become the duty of this court to determine whether or not that court abused its discretion in granting or refusing such new trial.

Judgment affirmed.