26678. FLORENCE *v.* STATE HIGHWAY BOARD.

DECIDED FEBRUARY 28, 1938. ADHERED TO ON REHEARING APRIL 1, 1938.

*Tidwell & Brown, Howell & Post,* for plaintiff.
*W. Glenn Thomas, J. M. C. Townsend,* for defendant.

SUTTON, J. The proposal, the written contract, and all the material parts of the plans and specifications are pleaded and made a part of the petition, the contract itself reciting that the proposal and plans and specifications are made a part of that agreement as fully and to the same effect as if they were set forth in the body thereof. As necessary for the consideration of the question here involved, the petition set out eight items of the notice to and proposal of the contractor, one of these being "4267.8 lin. ft. 4″ x 18″ granite curb reset, .20 per lin. ft., $853.56," and another being "71 lin. ft. 4″ x 18″ granite curb removed, .20 per lin. ft. $14.20." By the terms of the contract the quantities as shown in the notice to and proposal of the contractor were to be approximate only, and were subject to increased or decreased quantities of work at the contract unit price, but actual measurement was to control as a basis for paying for the same.

The subject-matter of this suit is a claim for extra work of removing 4352 linear feet of granite curb at 20 cents per foot, amounting to $870.40, which specific item, it is alleged, was not included in the proposal or specifications. But the plaintiff contends that he is entitled to pay for the removal of the 4267.8 lin. ft. of curb (actual measurement 4352 lin. ft.) at 20 cents per lin. ft. in addition to the 20 cents per lin. ft. for resetting said curb, as expressed in his proposal, and he alleges that when he bid 20 cents per lin. ft. to reset the granite curb, the removal thereof was not included, as he construed it, and that he at the time communicated his construction of the contract to the State Highway Board. The proposal and contract specifically provided for the removal of 71 lin. ft. of 4″ x 18″ granite curb at 20 cents per lin. ft. which was paid for by the defendant. On account of widening certain street intersections it was necessary to remove this 71 lin. ft. of granite curb, but this was not to be reset. The defendant contends that the item in the proposal about which this action revolves, 4267.8 lin. ft. 4″ x 18″ granite curb reset at 20 cents, necessarily included the removal of said curb, under the contract. The written contract between the parties stipulates that the proposal of the contractor and the plans and specifications are made a part of the contract as fully as if set forth therein. The proposal states that the plaintiff has carefully examined the plans and specifications, including the special provisions, and that he has personally exam-

ined the site of the work. The street to be improved was to be widened twelve feet, and the 4267.8 lin. ft. of granite curb set along the side of the street was to be moved over twelve feet and reset, as shown by the blue print plans.

While it is true that the unambiguous terms of a complete written contract may not be added to, taken from, or varied by parol testimony, and that all negotiations between the parties to such a contract which either preceded or accompanied its execution are merged in it, where a contract is ambiguous it is permissible for one or both parties to show the meaning placed on the contract by the parties at the time of its execution, and such construction will control. Code, § 20-703. My colleagues think the word "reset" is ambiguous as being susceptible of two constructions, one including the idea of removal and one not including such idea. It is also true that no recovery could be had on the agreement alleged to have been made before the execution of the written contract, but the agreement is admissible to show what the parties understood the written contract to mean, if it is ambiguous. The contract itself corroborates the contention of the plaintiff in error that the word *reset* does not include the idea of *removal,* in that it provides a unit price for "removing and resetting" cast-iron casting. If the contention of the highway department is correct this provision would simply have covered *resetting* the item, for the reason, as it contends, that *reset* includes *removal.* While curbing which is already set has to be removed before it is reset, it does not necessarily follow that it has to be removed by the person agreeing to reset it. When the contractor agreed to do all the work required by the contract he agreed to do all required by the contract as the parties interpreted it, so that what he agreed to do in this case depended on the understanding of what the word *reset* meant. If they agreed that it did not mean to *remove* curbing, the contractor did not by the contract agree to remove it. The fact that the parties did not amend the written contract before it was signed to cover the point under discussion does not matter one way or another, for the reason that a unit price was fixed in the contract for removing curb, and it was provided that if more of anything was done than was actually specified in the contract payment would be made for the actual quantity of work done at the unit price. So, it was unnecessary to amend the contract.

In view of the ruling that the contract was ambiguous it was error for the court to disallow the proffered amendment and to dismiss the petition on general demurrer.

*Judgment reversed. Stephens, P. J., and Felton, J., concur. Sutton, J., dissents.*

SUTTON, J., dissenting. While I prepared the opinion in this case, I do not agree with the conclusion reached by the majority of the court, to the effect that the word "reset" as used in the contract is ambiguous. I think the holding in the above decision in that respect is erroneous. The meaning of the word "reset," as defined in Webster's New International Dictionary, is "to set again." It naturally follows that before an object or thing can be reset it must have been set, then taken up or removed, and set again. This is the usual and ordinary meaning of the word. Counsel for both the plaintiff and the defendant concede that they have found no legal authority on the meaning of the word. What is its meaning as used in the proposal with reference to the granite curb, and why was it used at all? A street or road was to be improved, and this, in one particular, was to be done by widening it twelve feet. This work required that the portion of the street be graded, and the granite curb in question, located on the side of the street being widened, necessarily had to be taken up, moved over twelve feet, and placed or set again along the side of the road after it was widened. The proposal, which is a part of the written contract, states that the plaintiff has carefully examined the plans and specifications of this project, and that he has personally examined the site of the work. Unquestionably, he knew exactly what was to be done. He stated in his proposal: "I propose to furnish all necessary machinery, tools, apparatus, and other means of construction and do all the work and furnish all the materials in the manner specified, and in accordance with the State standard specifications, and to finish the entire project not later than 100 working days." He then accepted and signed the contract which he alleges in his petition is a legal, binding contract on the parties thereto.

Under the facts as disclosed by the petition, the contract being pleaded therein, I think the proper construction to be given the contract between the parties with reference to the item "4267.8 lin. ft. of granite curb reset," is that the word "reset" as here used included the removal of the curb, from where it was set before the

improvement was commenced, over twelve feet, to the side of the road where it was to be reset. The contract between the parties in this respect is a valid written instrument, without ambiguity, and parol evidence is inadmissible to add to, take from, or vary its terms. Code, § 20-704. "Parol negotiations eventuating in an unambiguous written contract are merged in the writing, and are ineffectual to vary or contradict the writing." *Capps* v. *Edwards*, 130 *Ga.* 146 (3) (60 S. E. 455); *Gibson* v. *First National Bank*, 158 *Ga.* 350, 353 (123 S. E. 606). "All oral negotiations between parties to a written contract, which either preceded or accompanied the execution of the instrument, are to be regarded as merged in, or extinguished by it; and the writing is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves." *Logan* v. *Bond*, 13 *Ga.* 192 (3); *Rich* v. *Rawleigh Co.*, 47 *Ga. App.* 571, 574 (171 S. E. 228). See also *Champion Manufacturing Co.* v. *Crandall*, 16 *Ga. App.* 536 (85 S. E. 673); *Shores-Miller Co.* v. *Fitzpatrick*, 23 *Ga. App.* 251 (2) (98 S. E. 228); *Stonecypher* v. *Georgia Power Co.*, 183 *Ga.* 498 (189 S. E. 13); Code, § 38-501.

I think the court properly disallowed the amendment for the reason that it sought to vary the terms of the written contract by alleging a parol agreement or communications which took place prior to the execution of the written contract sued on, and this being true the court did not err in sustaining the general demurrer to the plaintiff's petition.