33436.   BELL *v.* FITZ *et al.*

DECIDED JUNE 28, 1951.

*Mitchell & Mitchell, John C. Mitchell,* for plaintiffs in error.
*F. Kelly McCutcheon, R. Carter Pitman,* contra.

MacINTYRE, P. J. █ A cause of action is made up of two elements; namely, a duty and a breach of it. Allegations of fact from which the law will raise a duty, rather than mere allegations that it was the duty of a defendant to do certain things, have always been preferred. It is permissible, however, to set forth the facts, and then conclude that these facts raise a duty which the defendant has breached. Demurrer will then raise the question whether the conclusion is good in law. *Southern Railway Co.* v. *Liley,* 75 *Ga. App.* 489 (43 S. E. 2d, 576).

The plaintiffs allege that they stored their household goods and furniture in the warehouse of the defendant and the defendant represented himself to them as a bonded warehouseman and that they paid him storage charges, $6 insurance charges, and transportation charges from the defendant's warehouse to Dalton, Georgia, but that while still in the defendant's warehouse, their property was almost completely destroyed by fire. It is alleged further that the plaintiffs relied wholly upon the representations of the defendant that their property was insured fully, but were informed by him, subsequently to the fire, that it was not so insured; that the defendant failed to exercise the extrordinary care and diligence required of him by law for the protection of their property, but, on the contrary, he was guilty of gross neglect in not insuring said property, and in converting the $6 paid to him by the plaintiffs to his own use and not for the

purpose for which it was paid him, namely, for premium on an insurance policy on the property. When the plaintiffs stored their property with the defendant and paid him the $6, as alleged, he was under a duty to procure insurance against fire. He breached his duty by his failure to do so and is indebted to the plaintiff in the sum of $1000 besides interest at seven percent per annum since October 11, 1945.

The plaintiffs seem to contend that their cause of action is based on the theory that " 'any one who undertakes to transact some business or to manage some affair for another, by authority and on account of the latter, and to render an account of it, is an agent.' 1 Am. & Eng. Enc. of Law (2d ed.) p. 938." Schroeder *v.* Mauzy, 16 Cal. App. 443 (118 Pac. 443). If their suit is properly based on such a theory, it is a suit on a contract, and if the allegations of fact in the petition show that the agent received instructions to insure, he will be liable as an insurer for any loss or damage arising from his failure to insure. Schroeder *v.* Mauzy, supra; Herrick *v.* Hodges, 13 Cal. 434; Samonset *v.* Mesnager, 108 Cal. 354 (41 Pac. 337).

Agency is a contract by which one of the contracting parties confides the management of some affair, to be transacted on his account, to the other party, who undertakes to do the business and render an account of it. Black's Law Dictionary. Thus if this suit is properly based on such a theory of agency, it is a suit on a contract. If the allegations of fact of the petition show that the defendant undertook the agency, he was bound thereby, though it was gratuitously undertaken, to obey instructions and exercise good faith and due diligence in exercising that which he had pretended to do and for a failure to do so, he will be held liable to his principals for the resulting loss and damage. Schroeder *v.* Mauzy, supra.

"Where a warehouseman for hire receives goods for storage, and, under an express contract . . is under duty to insure them against loss by fire, if he commits a breach of duty imposed by the express contract . . and his customers are damaged thereby, he will be liable." *Farmers Ginnery & Mfg. Co. v. Thrasher,* 140 *Ga.* 669 (79 S. E. 474).

The petition alleged in effect that the defendant was the agent of the plaintiffs; that he did not obey instructions, did not exer-

cise good faith, and was guilty of gross negligence in executing that which he had pretended to do, and that for a failure to do so, he was liable to the plaintiffs, his principals, for the resulting damage and loss. Even though the petition contained such language as that the defendant was guilty of gross negligence, etc., which is language ordinarily appropriate in suits in tort, yet, this language is also appropriate in a suit based on the agency of the defendant where, as here, the defendant was obligated, without negligence, to obey the instructions of the plaintiffs, as principals, to procure fire insurance; and, where the plaintiffs' counsel stipulated in open court: "It is stipulated and agreed by counsel representing the plaintiff that they are proceeding solely in this case to recover for breach of contract to procure insurance by the defendant Bell, upon the property of the plaintiffs Fitz, and in nowise seeking any recovery as a result of any duty owed as a warehouseman, as a result of any negligence or act of negligence, and it is admitted that they are not seeking to hold him as a warehouseman in caring for the property," and this stipulation was made a part of the record in the case, we do not think the trial court erred in construing the petition as a suit on a contract and not one on a tort. "When a transaction partakes of the nature both of a tort and a contract, the party complainant may waive the one and rely solely upon the other." Code, § 105-105; *Ford & Co.* v. *Atlantic Compress Co.*, 138 *Ga.* 496 (75 S. E. 609); *Fain* v. *Wilkerson*, 22 *Ga. App.* 193 (2) (95 S. E. 752); *Darling* v. *Purdom*, 14 *Ga. App.* 597 (2) (81 S. E. 800). The nature of the petition will be determined from the petition as a whole and the manifest intention of the parties. It follows that the trial court did not err in overruling the demurrers to the petition.

■ The evidence introduced upon the trial of the case was, in part, as follows: "And he [the defendant] suggested that I [one of the plaintiffs] take additional insurance. Do I know whether Mr. Bell [the defendant] ever took out a policy of fire insurance on the furniture or not—I presumed that he did—I didn't know—I never received the policy—he just told me that he would . . All I know is the man told me to take out another $1000 worth of insurance, and—he just said that because the furniture was going to be there a certain [such an?] in-

definite time that I had better have extra insurance. Yes, I testified here a few weeks ago, about this transaction with Walter Bell. Well, I got in contact with Mr. Bell by telephone. I believe too, that I went to see him and got him to take my furniture. That I was going to leave Philadelphia and for him to ship it. That he would ship it, and he said that he would take it and store it and he would ship when he got a chance, in other words, at that time trucking was bad and everything and he couldn't get a truck anytime and ship it anytime, but he took my furniture and said he would store it in his warehouse and when he could he would ship it. And then I talked to the boy, I believe that's his son, and he told me that the furniture would maybe be staying there for a while, he told me that their insurance wouldn't cover it for what my furniture was valued at because it was pretty nice furniture, I think. And to either buy a policy or give him the money and that he'd get the insurance policy for it for an extra thousand dollars over and above their insurance. I believe he told me it was 30 cents on the pound was all that their coverage was, and I thought it was a good idea and I paid him the $6 and he signed the receipt. That's what I mean by receipt there. Well, that's all the receipt there was—and said he would get the policy. I told him that I was leaving Philadelphia the next day, and that I wouldn't be able to stay there and he said that he would handle it for me. That's right. Now, when I was discussing with him there about that insurance, when he told me that all that the insurance coverage would be 30 cents under the bill of lading, he suggested to me that he'd get another $1000 worth to cover it, Walter Bell did, it was his idea, yes sir. He suggested I should have more insurance. He asked me did I have insurance on my furniture; I told him no. And he suggested it might be a good idea for me to get it; that's right. The furniture was worth more than $600. I told him I was leaving the next day. He suggested that he would get it—the insurance—himself. Well, he didn't say he'd mail me the policy, I didn't say that he said he'd mail me the policy, no sir, I don't remember off-hand. I know that he said he'd get me the policy—I don't remember whether he said he'd mail it to me or not. He probably did, I said I didn't remember off-hand now, whether he said he'd mail it to me or

not. I know he just said he'd get the policy for me and get it to me some way or another, or whether he was going to hold it or not, the insurance policy. He had the furniture, it means he would collect for it if it burned up—he would collect for it. Now, as to what kind of insurance this was that he was going to get for me; well, I wouldn't swear that he said it was fire insurance, definitely I couldn't. I couldn't swear that he said it was fire insurance, but I presumed that he said that it was fire insurance. I wouldn't definitely swear to it that long ago, I presumed in my mind that—I mean, he gave me the idea that it was fire insurance because it was going to be there and he mentioned in case of fire that it would be there so long that, you know, that something could happen to it—being there that long—I mean, the way he explained it to me it was in case of a fire and I presumed that it was fire insurance because he said in case of a fire or something you should have another $1000—
. . As to whether it was fresher on my mind when I testified the first time than it is now, well, I don't know, Johnnie, I thought about it a lot since then. You ask me if I testified this: Talking about this insurance—'according to the freight bill, as to whether or not this charge was for cargo insurance; well, I don't know, he didn't tell me'; and I answered, 'No, he didn't.' So, he never did tell you, or he never agreed with you —you all had no agreement? And you won't swear now that he—there was any agreement to procure fire insurance? Well, not strictly fire insurance I won't, no sir. Because he mentioned that it would probably burn—I mean it was dangerous, fire I mean was dangerous in this warehouse and everything and he wanted me to take out a $1000 worth of insurance at the time. I will presume though that—I mention the fact that he never mentioned the cargo insurance to me at the time." The testimony introduced on behalf of the defendant was to the effect that the $6 which he received from the plaintiffs was for a premium on a transportation-insurance policy on the plaintiffs' property and was not for a fire-insurance policy on such property. The plaintiffs contend that the word "insurance" as used in the contract here in question, made with one of the plaintiffs, Mr. Fitz, meant fire insurance, and the facts proved, even though neither party to the contract used the specific words, "fire in-

surance" or any other words designating specifically any other kind of insurance, show that fire insurance was meant. "The jury were the sole judges of the facts, and it was their privilege to draw their conclusions from the entire evidence, or from any part of it." *Sutton* v. *State,* 123 *Ga.* 125, 127 (51 S. E. 316). The jury was authorized to find that the best proved fact of what kind of insurance was meant was fire insurance, such fact being an inference from other facts proved and that this meaning placed upon the contract by one party was known to be thus understood by the other party at the time, and that, therefore, the true meaning of the word insurance as used in the contract in question was fire insurance. Code § 20-703; *Florence* v. *State Highway Board,* 57 *Ga. App.* 752 (196 S. E. 86) ; *Holloway* v. *Brown,* 171 *Ga.* 481 (155 S. E. 917). The evidence authorized the verdict.

■ Complaint is made in special ground 1 of the motion for a new trial that the trial court erred in failing to charge certain appropriate principles of law. Insofar as these principles were applicable to the case, they were covered by the general charge; and if the defendant had desired a more specific instruction with respect to the particular matter, a timely written request for such instruction should have been submitted to the judge. *Western & Atlantic R. Co.* v. *Tate,* 129 *Ga.* 526, 531 (59 S. E. 266).

The court did not err in overruling the demurrers to the petition or in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Worrill, JJ., concur. Townsend, J., being disqualified, Worrill, J., was designated to preside in his stead.*