## 49811. COOK-DAVIS FURNITURE COMPANY, INC. v. DUSKIN.

WEBB, Judge.

Cook-Davis Company, Inc., brought an action against Frank Duskin seeking recovery under a retail instalment sales contract for the purchase price of furniture described in the contract. A copy of the contract, attached to the complaint, showed that property insurance was requested by the buyer, and that the premium for the property insurance was added to the charges listed in the contract. The defendant answered, admitting the execution of the contract and that he had made no payments, and set up a defense in paragraphs 5, 6 and 7 of his answer as follows:

"In further response to the complaint of the plaintiff, defendant alleges as follows: This defendant executed an instalment sales contract with Cook-Davis Furniture Company, Inc., which said instalment contract called for $180.54 to pay for property insurance on the property set forth in said sales contract executed November 25, 1969. Defendant alleges that he specifically requested property insurance to be obtained as a part of the contract, that he placed an 'X' in that section of the contract indicating his election to obtain property insurance as a part of the contract, and that he placed his signature in that section of the contract entitled 'Insurance Statement' indicating his understanding that property insurance was part of the contract for which he paid $180.54.

"That defendant, relying on said contract and with the understanding that Cook-Davis Furniture Company,

Inc., had included property insurance as a part of its credit to him, allowed the furniture to be removed to his home, where on the night of November 27, 1969, the furniture described on the sales contract was destroyed by fire which burned the home of the defendant. All of the furniture was burned beyond repair or reuse.

"Defendant alleges that pursuant to the contract, his first instalment would have been due on January 31, 1970. Defendant further shows that as part of the contract the title remained in the plaintiff. Plaintiff should have been reimbursed $4,250 from his property insurance company and plaintiff would not be entitled to a judgment."

The notice of appeal designated the materials to be sent up by the clerk of the trial court and recited that no transcript of the evidence was to be sent up. The only knowledge we have of what transpired is the judgment of the court granting to the defendant-appellee a judgment notwithstanding the verdict, from which judgment the plaintiff-appellant appeals to this court. That judgment reads as follows:

"Plaintiff brought suit on an Instalment Sales Contract for Furniture. The transaction is governed by 'The Retail Instalment and Home Solicitation Sales Act,' Ga. Code 96-901 et seq. The defendant buyer checked the appropriate option in the contract indicating a desire for the furniture to be covered by insurance and was charged a premium therefor in the contract computation.

"The defense was offered that the furniture was destroyed by fire and that the defendant should not have to pay due to the insurance provision of the contract.

"Evidence at the trial indicated that the sale occurred just prior to a holiday weekend and at a time when the Finance Company to whom plaintiff normally discounted its retail instalment contracts was closed for the weekend and for these reasons plaintiff's officer explained to defendant that the furniture could not be delivered to him until the Finance Company office was open as only the employees of that company could activate the requested insurance coverage. After some discussion, according to plaintiff's evidence, the defendant assured an officer of plaintiff that he was adequately covered by a

homeowner policy, that he would waive the insurance protection over the weekend, and that he would assume the attendant risk of loss. Further according to plaintiff's evidence, the plaintiff's officer authorized delivery after such waiver by defendant was made.

"During the holiday weekend, the furniture was destroyed by fire.

"Defendant's evidence at the trial was contradictory to that of plaintiff and indicated that no waiver whatsoever of the insurance provisions of the contract was mentioned or agreed to by him.

"The defendant made a motion at the close of the plaintiff's case and at the conclusion of the evidence for both sides for a directed verdict on the basis that the waiver of the insurance provisions of the contract, even if made, was illegal and void and that there being no writing contradicting the terms of written contract, a judgment for the defendant was demanded.

"The court reserved a ruling and submitted to the jury for special verdict whether there was in fact a waiver of the insurance provisions as claimed by plaintiff. The jury found there was a waiver. The defendant now raises the same questions by motions for judgment n.o.v. . .

"After study of the issue, this court has concluded the motion of the defendant must be granted. The Act under which the rights of the parties are to be determined requires that the instalment contract be in writing (Ga. Code § 96-903), and, moreover, that Act prohibits waiver of the provisions thereof (Ga. Code § 96-913). Consumer legislation of the type under consideration here simply modifies general civil law in other fields and it is no answer to say that a written contract may be modified by a new oral agreement under certain circumstances or that the Uniform Commercial Code authorized waiver of a sales contract provision. See Ga. Code § 109A-2—209(4); *Geiger Finance Co. v. Graham,* 123 Ga. App. 771, 775. The Act in question forbids an oral modification or waiver of an instalment sales contract governed by its terms.

"A delay in activating the insurance not having been provided in the contract, none can now be provided.

"Judgment is rendered on the defense motion n.o.v. and accordingly it is ordered that plaintiff take no

recovery and that defendant be discharged with the costs."

The jury verdict reads as follows: "We, the jury find in favor of the plaintiff that the defendant did waive his rights." This finding by the jury as to "waiver" was obviously based upon a finding that the testimony of the plaintiff as to the circumstances surrounding the delivery of the property, as shown in the trial judge's order, was found to be true by the jury. And the trial judge based his ruling on questions of law, which in his opinion compelled him to disregard the jury's finding. The contract does not recite when the property insurance requested by the buyer will become effective. It is silent as to this. *Held:*

1. Ordinarily we would not consider deciding an enumeration of error upon the trial court's sustaining of a motion for judgment notwithstanding the verdict in the absence of a transcript of the proceedings, including the evidence. *Berrien v. Avco Financial Services,* 127 Ga. App. 584 (194 SE2d 337). Here, however, the facts as to a defense set up by the defendant appellee have been determined adverse to him by a special finding of the jury upon a conflict of testimony recited in the trial judge's order, and the trial judge granted the motion for judgment notwithstanding the verdict based on a matter of law, irrespective of the finding. In these circumstances the transcript of the evidence is not necessary for a decision of the case.

2. Uniform Commercial Code, Code § 109A-2—209 (4) provides that "Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) [because not in writing] or (3) [because the statute of frauds is not satisfied] it can operate as a waiver." However, The Retail Instalment and Home Solicitation Sales Act (Ga. L. 1967, p. 659 as amended; Code Ann. Ch. 96-9) governs here. Cf. *Geiger Finance Co. v. Graham,* 123 Ga. App. 771, 775 (182 SE2d 521). Section 13 of that Act (Code Ann. § 96-913) provides that "Any waiver of the provisions of this Act shall be unenforceable and void," and section 3 (a) (Code Ann. § 96-903 (a)) provides that "Every retail instalment contract shall be in writing and shall be completed as to all *essential provisions* prior to the signing thereof by the buyer . . ." (Emphasis supplied.)

The only question here is whether the provisions for insurance are "essential provisions" of the contract. If so, they are required to be in writing (§ 3 (a) of the Act; Code Ann. § 9-903 (a)), and any oral agreement that the insurance would not be procured by the seller as provided for by the contract is "unenforceable and void." § 13 of the Act (Code Ann. § 96-913). The furniture company contends that since § 3 (g) of the Act (Code Ann. § 96-903 (g)) provides that the buyer can procure his own insurance, then procurement of the insurance by the seller is an "optional," rather than "essential," provision of the contract and need not be in writing.

This line of reasoning must be rejected. Virtually all terms of an instalment contract may be "optional" until agreed upon by buyer and seller, including the purchase price, down payment, amount of monthly payments, etc. But once the goods are selected and terms agreed to, the former "optional" matters become the essential provisions of the contract. Here there is a separate "box" on the contract form stating that "Property Insurance may be obtained either as part of the credit (in which case cost is set forth in the Statement of Transaction) or from a person of your choice." Below this statement appears the following: "I [X] request [ ] decline Property Insurance," signed by the buyer. In the "Statement of Transaction" appears the amount of the sales tax, cash price, down payment and unpaid balance, and the cost of the credit life insurance and property insurance. The cost of the life and property insurance are added together and listed as "Total Other Charges," which sum is added into the "Amount Financed," upon which a "Finance Charge" is calculated, which in turn is added into the "Total of Payments."

It is hence our view that once a retail instalment contract is reduced to writing and signed, all its provisions must be regarded as "essential provisions" within the meaning of § 3 (a) of the Act. It is also our view that since the contract fails to state when the insurance would become effective, the contemplated effective date must be one which would afford protection at the time the risk of loss shifted to the buyer, which is the purpose of the insurance.

Accordingly, we hold void and unenforceable any oral agreement that the insurance would not be procured by the seller as provided for by the written contract.

3. The furniture company apparently concedes that if the oral agreement or "waiver" is void and unenforceable, then it is not entitled to recover. This is correct, since defendant would be entitled to credit for the amount of the insurance. *Atlas Auto Finance Co. v. Atkins,* 79 Ga. App. 91 (53 SE2d 171). Accord, *Bell v. Fitz,* 84 Ga. App. 220 (66 SE2d 108); *Farmers & Merchants Bank v. Winfrey,* 89 Ga. App. 122 (78 SE2d 818); *Home Bldg. & Loan Assn. v. Hester,* 213 Ga. 393 (99 SE2d 87); *Consumers Financing Corp. v. Lamb,* 217 Ga. 359 (122 SE2d 101).

*Judgment affirmed. Bell, C. J., Deen, P. J., Quillian, Evans, Clark, Stolz and Marshall, JJ., concur. Pannell, P. J., dissents.*

ARGUED OCTOBER 3, 1974 — DECIDED FEBRUARY 12, 1975 — REHEARING DENIED MARCH 13, 1975 — 

*Duross Fitzpatrick,* for appellant.
*A. Newell NeSmith, W. Lonnie Barlow,* for appellee.

EVANS, Judge, concurring.

I concur fully in the majority opinion but wish to add the following:

Frank Duskin purchased certain furniture from Cook-Davis Furniture, Inc. of Cochran, Georgia, making a down payment and executing his note for the remainder. Included in the note so executed was $180.54 for which the seller agreed to purchase property insurance. The property was delivered at 6:15 p.m. on Thursday, November 26, and was destroyed by fire two days later.

The seller brought suit for the unpaid balance, and the purchaser defended upon the ground that he had purchased from the seller insurance to cover destruction of the property, albeit it appeared at the trial that the seller had neglected to procure the insurance for which the purchaser had given his note.

While this is not a case in equity, equity follows the

law (Code § 37-113) and there is an equitable maxim which fits this situation, to wit: "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss."

Here, the one who set the fire is the third person whose act caused the damage, but the seller, in failing to procure the insurance after charging the purchaser for same, unquestionably placed it in the power of the third person to inflict the injury, and consequently must bear the loss.

The seller suggests in his brief that the purchaser had other insurance on the property which he collected, and this ought to operate as an exoneration of seller for its failure to procure insurance.

First, let it be noted that the pleadings make no such contention and the transcript of evidence is not before this court. We can not decide cases upon the unsupported statements made in the briefs of counsel. *Berrien v. Avco Financial Services,* 127 Ga. App. 584 (1) (194 SE2d 337).

Next, there is a rule known in law as "the collateral source rule" which operates in cases such as this. "Equity aids the vigilant, not the slothful." *Raines v. Clay,* 161 Ga. 574, 578 (131 SE 499). This principle appeared as far back as *Western & Alabama R. v. Meigs,* 74 Ga. 857 (5), wherein the railroad sought to reduce damages because deceased had the foresight to insure his life, paying the premiums out of his own pocket. Justice Lumpkin very sagely reduces this argument to an absurdity at p. 868, to wit: "If her recovery could thus be reduced, it might be insisted that, where the husband's life was insured for more than she was allowed to recover under the law as its actual cash value, the company could claim a balance against the family of the deceased, on the idea that the killing of the husband and father was a positive pecuniary benefit to them." Judge Eberhardt discusses this principle fully in *Pennsylvania Threshermen &c. Co. v. Hill,* 113 Ga. App. 283, 286-290 (148 SE2d 83), the gist of which is that unless the money was paid and accepted in extinguishment of all claims of every kind and against everybody, others may still be held liable. For other authorities on the collateral source rule see *Nashville C.*

& *St. L. R. Co. v. Miller,* 120 Ga. 453 (47 SE 959); *Wachtel v. Leonard,* 45 Ga. App. 14 (1) (163 SE 512); *Story v. Pless,* 100 Ga. App. 756 (112 SE2d 407).

I am authorized to state that Presiding Judge Deen and Judge Marshall concur in all that is said above.

PANNELL, Presiding Judge, dissenting.

I agree with the statement of facts and the ruling in Division 1 of the opinion, but I cannot agree with the conclusions reached in Division 2 of the opinion. Let us examine some of the provisions of the Retail Instalment and Home Solicitation Sales Act. Section 13 of the Retail Instalment and Home Solicitation Sales Act (Ga. L. 1937, p. 659, 673; Code Ann. § 96-913) provides: "Any waiver of the *provisions of this Act shall be unenforceable and void.*" (Emphasis supplied.) Section 3, subsection (a) of the Act provides: "Every retail installment contract shall be in writing and shall be completed as to all essential provisions prior to the signing thereof by the buyer . . ." This Section further provides in various subsections therein just what is required by the Act to be in the contract and what certain things must be done, with detailed instructions; and in Subsection g thereof provides: "The seller under any retail installment contract shall, within 30 days after execution of the contract, deliver or mail or cause to be delivered or mailed to the buyer at his aforesaid address, any policy or policies of insurance the seller has agreed to purchase in connection therewith, or in lieu thereof a certificate or certificates of such insurance. . . Nothing in this Chapter shall impair or abrogate the right of a buyer to procure insurance from an agent and company of his own selection," and "the term 'holder' as used in this Chapter means the retail seller, unless the seller has assigned the contract, in which case 'holder' means the assignee of such contract at the time of the determination." This Section of the Act is codified in the Annotated Code as § 96-903.

The question here is whether the act of the defendant in taking delivery of the goods prior to the insurance becoming effective, with knowledge that said insurance was not effective and assuming the risk of loss and depending upon his family policy to cover any loss,

amount to a waiver of any *provision of this Act.*

(a) The contract in the present case contained no recitation or statement that the insurance would become effective immediately, nor is there any requirement *in the Act* that such be the case or that such a statement be therein, nor does *the Act* require that any statement as to the effective date of the insurance be stated in the contract. The trial judge, in his order, apparently misconstrued the contract as having provided therein for instant insurance. So does the majority here, although this is contrary to the statement of facts that the contract did not provide for an effective date for the insurance, however, in the absence of any requirement or provision in the Act, requiring such a statement to be in the contract, *no waiver of such provision of the contract,* even if such a waiver occurred *is a waiver of the provisions of the Act* as shown above. Section 13 of the Act only proscribes a waiver of the provisions of the Act; it has nothing to do with a waiver of the provisions of the contract as drawn. As to waiver of the provisions of sales contracts generally, see Code § 109A-2—209 (4), a provision of the UCC.

The majority here and the trial judge relied upon *Geiger Finance Co. v. Graham,* 123 Ga. App. 771 (182 SE2d 521) as authority that this provision of the sales sections of the Georgia Commercial Code has no application to a contract under the Retail Instalment and Home Solicitation Sales Act. There is no ruling in that case holding that the Act here governs various legal incidents of a contract of sale *not specifically or impliedly covered therein.* I agree that the present contract is governed by the provisions of the Act, but when there is no provision of the Act covering the situation, then the general law outside the Act must be applied. In the *Geiger Finance* case, this court held that the contract there involved was not a negotiable instrument within the definition of Code § 109A-3—104 (1), and in referring to the contract, said in the opinion: "It contains a purported waiver by the buyer of 'any defense, counterclaim or cross-complaint' he could have asserted against the seller. This goes further than reiterating the rights of the holder in due course since 'any defense' would also presumably include infancy, incompetence, discharge in bankruptcy,

etc. This is not the type of waiver contemplated by Code Ann. § 109A-3—112. Rather, it is an attempt to impart the effect of negotiability to a writing which cannot otherwise meet the test of an Article 3 negotiable instrument." The Code Section there referred to was not Section 109A-2—209 (4), but was 109A-3—112, which provides: "The negotiability of an instrument is not affected by . . . (e) a term purporting to waive the benefit of any law intended for the advantage or protection of the obligor." There was no ruling in that case that can possibly be held as ruling that the provisions of the UCC relating to sales can have no application to contracts under the Retail Instalment and Home Solicitation Sales Act, and which sections contain nothing but *legal incidents arising from a sale not* controlled by any provision of that Act.

(b) Appellee insists, however, that because Section 3 of the Act (Code Ann. § 96-903) provides: "Every retail instalment contract shall be in writing and shall be completed as to all essential provisions prior to the signing thereof by the buyer" (with certain exceptions which are not here material) that the entering into the agreement relating to the immediate delivery of the goods and the assumption of risk by the buyer amounted to a waiver of the requirement of the Act that the instalment contract shall be in writing. I do not agree. In my opinion, all essential provisions of the contract were included and completed. And even the majority held the contract *as written* provided the insurance was to become effective upon delivery of the goods. What more could the contract have contained in reference thereto? However, even if it did not so provide (and it did not) the requirement that the contract be in writing is not a requirement that all legal incidents to a contract and actions taken thereunder, also be included in the writing. To so hold would require all the definitions given in the Act to be included in the contract, would require all legal incidents to the delivery and receipt of the goods under the contract and other legal incidents as well. We do not conclude that such was the intention of the legislature. What occurred here was no attempted waiver *of the provision of the Act* requiring the contract to be in writing, *but merely the acceptance and*

*delivery under the contract of the goods specified thereto with knowledge the insurance which the buyer authorized the seller to procure had not at that time been procured,* and the jury found as a fact that this occurred.

(c) What then is the legal result of this delivery and acceptance, as found by the jury? The Act contains no answer. To answer this question we go to the Commercial Code, which, in my opinion, controls at this point. Where the Retail Instalment and Home Sales Solicitation Act leaves off, the provisions of the Commercial Code on Sales begin. Code § 109A-2—303 provides: "Where this article allocates a risk or a burden as between the parties 'unless otherwise agreed,' the agreement may not only shift the allocation but may also divide the risk or burden."

The contract in the present case being silent on this question, we must look elsewhere to determine where the risk of loss lay, whether on the seller or the buyer, under the facts here. Subsection 3 of the Code § 109A-2—509 provides: "In any case not within subsection (1) or (2), the risk of loss passes to the buyer on his receipt of goods if the seller is a merchant; otherwise, the risk passes to the buyer on tender of delivery." Subsections (1) and (2) are not applicable here. It follows, therefore, that even in the absence of what is termed a "waiver" by the jury verdict and by the trial judge, and by the parties, the result would have been the same under the law. Accordingly, we should hold that the trial court erred in granting the motion for a judgment notwithstanding the verdict in favor of the defendant-buyer.

In my opinion, the majority have converted a prohibition against "waiver" of a *provision of an Act* into a prohibition against *a waiver of a provision of a contract;* which contract was required to be in writing by the Act, but which waived provision was *not required to be in the contract by the Act,* although it was therein and it was in writing.

The cases relied on by the majority are cases where the buyer thought he was insured, and was not. Here, according to the jury verdict, the buyer took delivery of the goods, not only knowing he was not insured, but expressly assumed the risk of loss. And the attempt to apply equity rules in favor of the buyer who got possession

of the property by assuming the risk of loss, is inappropriate. If anything, they should be applied in favor of the seller.

I would reverse.